J-S07007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN A. STEWART | : | |
| | : | |
| Appellant | : | No. 1376 MDA 2018 |

Appeal from the PCRA Order Entered July 27, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0005521-2014

BEFORE:   OLSON, J., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 11, 2019**

Appellant, Shawn A. Stewart, appeals from the order entered on July 27, 2018, dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  Although we leave Appellant's convictions undisturbed, we vacate the punishments imposed as part of Appellant's judgment of sentence and remand for resentencing consistent with this memorandum.

On direct appeal, we briefly summarized the facts of this case as follows:

[I]n the two years leading up to early January 2014, Appellant and [S.M.[1]] were engaged in a "friends with benefits" relationship. As of January 2014, [S.M] lived in a Middletown, Pennsylvania townhome with her 13-year old twin sons. In the two months leading up to January 6, 2014, [S.M.'s] father [("Father")] lived with [S.M.] and her sons after moving to Middletown from Puerto Rico.

---

[1] We use the victim's initials to protect her identity.

---

*   Retired Senior Judge assigned to the Superior Court.

On the morning of Monday, January 6, 2014, [S.M.] was at work and her sons were at school when [Father] heard a knock on the front door of the townhome. He opened the door to find two males and one female who asked for [S.M.]. When [Father] explained she was not there, the three entered the home uninvited. One intruder put a gun to [Father's] chest, ordered him to the floor, zip-tied his wrists behind him, and placed an item over his head. The other two intruders went upstairs and ransacked [S.M.'s] bedroom and [Father's] bedroom before leaving the home with a small blue suitcase belonging to [Father].

[Father] was able to leave the home and summon assistance from a neighbor who called the police. The police, in turn, called [S.M.] who returned to the home. In the course of discussions with the police, [S.M.] explained that she had fabricated a story—playing to Appellant's perpetual interest in money—telling Appellant she was traveling to Puerto Rico over the January 3-5 weekend to conduct business for her father and she was returning to Middletown with $87,000 in a locked bag.

Following a police investigation, Appellant was arrested and charged with burglary, robbery, conspiracy and other crimes. Following trial, a jury found Appellant guilty of all ten counts against him.[2] On August 3, 2015, the trial court sentenced Appellant to consecutive terms of imprisonment totaling not less than 28 years nor more than 56 years in a state correctional institution, plus fines totaling $4,000.[00.] Each of the sentences fell within the standard range for the crime committed.

*Commonwealth v. Stewart*, 2016 WL 5266553, at *1 (Pa. Super. 2016) (unpublished memorandum). This Court affirmed Appellant's judgment of sentence in an unpublished memorandum on July 25, 2016. Appellant did not file a petition for allowance of appeal with our Supreme Court.

---

[2] Appellant was convicted of robbery, conspiracy to commit robbery, burglary, conspiracy to commit burglary, conspiracy to commit unlawful restraint, conspiracy to commit false imprisonment, recklessly endangering another person, simple assault, theft by unlawful taking, and criminal use of communication facility.

- 2 -

On August 22, 2017, Appellant filed a timely, counseled PCRA petition. On September 5, 2017, at the PCRA court's direction, counsel for Appellant filed an amended PCRA petition. On June 29, 2018, the PCRA court issued notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss the PCRA petition, along with a memorandum opinion setting forth its reasons for denying Appellant relief. On July 27, 2018, the PCRA court filed an order dismissing Appellant's PCRA petition. This appeal resulted.[3]

On appeal, Appellant presents the following issues for our review:

I.    Whether the PCRA court committed reversible error by dismissing [Appellant's] PCRA claim that trial counsel was ineffective for failing to object to and/or request any remedial measures following the prejudicial closing argument by the Commonwealth, which included misrepresentation of testimony, misleading inferences[,] and arguing facts not in evidence?

II.   Whether the PCRA court committed reversible error by dismissing [Appellant's] PCRA claim that trial counsel was ineffective for failing to object to and/or request an appropriate cautionary instruction when Detective [Robert] Appleby improperly offered his personal opinion as to the guilt of [Appellant] and that he was observed in one of the vehicles?

III.  Whether the PCRA court committed reversible error by dismissing [Appellant's] PCRA claim that trial counsel was ineffective for failing to investigate and call defense witnesses Maritza Melendez and Rickie Hairston at trial?

---

[3] Appellant filed a notice of appeal on August 16, 2018. The PCRA court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely. On September 14, 2018, the PCRA court filed an opinion pursuant to Pa.R.A.P. 1925(a) relying upon its earlier June 29, 2018 decision for its rationale in denying Appellant relief.

- 3 -

IV. Whether the PCRA court committed reversible error by dismissing [Appellant's] PCRA claim that trial counsel was ineffective for failing to request a [jury] instruction that the identification testimony of the complainant must be received with caution where he was unable to identify and/or observe his assailant[?]

V. Whether the PCRA court committed reversible error by dismissing [Appellant's] PCRA claim that trial counsel was ineffective for failing to use available impeachment evidence derived from the police interrogation of [S.M.]?

VI. Whether the PCRA court committed reversible error by dismissing [Appellant's] PCRA claim that trial counsel and/or post-sentence counsel were ineffective for failing to object to the [trial] court's application of erroneous sentencing guidelines?

VII. Whether the PCRA court committed reversible error by dismissing [Appellant's] PCRA claim that trial counsel and/or post-sentence motion counsel were ineffective for failing to object to the [trial] court's sentencing of multiple inchoate crimes of conspiracy, where the evidence revealed that those conspiracies were part of the same agreement or continuous conspiratorial relationship?

VIII. Whether the PCRA court committed reversible error by dismissing [Appellant's] PCRA claim that trial counsel and/or post-sentence motion counsel were ineffective for failing to object to improper sentencing factors, namely [Appellant] maintaining his innocence as a lack of acceptance of responsibility and lack of remorse?

IX. Whether the PCRA court committed reversible error by dismissing [Appellant's] PCRA claim that trial counsel was ineffective for standing silent and failing to advocate whatsoever on behalf of [Appellant] at sentencing, amounting to a complete abandonment of counsel?

X. Whether the PCRA court abused its discretion by denying an evidentiary hearing where [Appellant] raised substantive and material issues of fact regarding trial counsel's

ineffectiveness that required the need to determine the basis for trial counsel's actions?[4]

Appellant's Brief at 4-6 (complete capitalization omitted).

Appellant's first nine issues challenge trial counsel's effectiveness. Our standard of review is as follows:

> We must determine whether the PCRA court's ruling is supported by the record and free of legal error. In examining [] claim[s] of counsel ineffectiveness, we apply the following principles:
>
> > It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. To prevail on an ineffectiveness claim, the petitioner has the burden to prove that (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. The failure to satisfy any one of the prongs will cause the entire claim to fail.

***Commonwealth v. Pou***, 201 A.3d 735, 738–739 (Pa. Super. 2018) (citation omitted).

On the first issue we examine, Appellant claims that trial counsel was ineffective for failing to object to the Commonwealth's closing argument or to request appropriate curative jury instructions. Appellant's Brief at 17-22. Appellant complains that the Commonwealth's "closing argument was riddled with falsities." ***Id.*** at 20. Appellant contends that the Commonwealth, in

---

[4] For ease of discussion and disposition, we have reordered Appellant's issues as presented.

closing, suggested that Appellant was the individual who held Father at gunpoint, despite the Father's testimony that he did not see who was holding the gun. *Id.* Appellant further maintains that "the prosecutor also argued facts not in evidence such as that [Appellant] was the 'ringleader,' 'this was his idea,' and that historical cell[ular] [tele]phone data placed [Appellant's] cell[ular] [tele]phone at the address at the approximate time of the home invasion." *Id.*

This Court has held:

It is axiomatic that during closing arguments the prosecution is limited to making comments based upon the evidence and fair deductions and inferences therefrom. Indeed, given the critical role that the Commonwealth plays in the administration of justice, a prosecutor has been historically prohibited from expressing a personal belief regarding a defendant's guilt or innocence or the veracity of the defendant or the credibility of his witnesses.

However, because trials are necessarily adversarial proceedings, prosecutors are entitled to present their arguments with reasonable latitude. Moreover, it is well settled that defendants are entitled to a fair trial, not a perfect one. Thus, a prosecutor's remarks do not constitute reversible error unless their unavoidable effect was to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.

*Commonwealth v. Ligon*, 2019 WL 1109515, at *3 (Pa. Super. 2019) (internal citations, quotations, and brackets omitted).

Here, the PCRA court determined that there was no merit to Appellant's prosecutorial misconduct claim regarding the Commonwealth's closing arguments, opining that "[t]he jury heard ample evidence which supported the Commonwealth's [closing] arguments[.]" PCRA Court Opinion,

- 6 -

6/29/2018, at 8. The PCRA court noted that the jury heard evidence that S.M. told Appellant about a fictitious money stash held inside the residence at issue. *Id.* The Commonwealth presented evidence that Appellant questioned S.M. about who would be at the house at the time of the crimes and said that he was "going to get this money." *Id.* As such, the trial court determined that the evidence showed that the home invasion was Appellant's idea. *Id.* Further, Father testified that one of the men involved held him at gunpoint. *Id.* The Commonwealth also presented Appellant's cellular telephone data indicating he was in close proximity to the crimes. *Id.* Upon our review of the certified record, we agree with the PCRA court that the Commonwealth's closing argument was fairly based upon the evidence presented at trial. Moreover, the trial court instructed the jury that "[t]he speeches of counsel are not part of the evidence, and [the jury] should not consider them as such." N.T., 6/10/2015, at 192. "It is well settled that the jury is presumed to follow the trial court's instructions." *Commonwealth v. Vucich*, 194 A.3d 1103, 1113 (Pa. Super. 2018) (citation omitted). For all of the foregoing reasons, the first issue lacks merit.

Next, Appellant argues that trial counsel was ineffective for failing to object or request a cautionary jury instruction when Detective Robert Appleby offered his personal opinion as to Appellant's guilt. Appellant's Brief at 22-24. Appellant points to an exchange at trial wherein Detective Appleby testified about surveillance video showing three vehicles circling the residence at issue prior to the crimes. Detective Appleby testified that he believed that

Appellant was in one of those vehicles. *Id.* at 23-24. Appellant argues that "[t]here was no evidence elicited at trial, from any source that [Appellant] was one of the individuals in the aforementioned vehicles["] and that Detective Appleby's "opinion was tantamount to a declaration of his professional opinion that [Appellant] was guilty as charged." *Id.* at 24.

On this claim, the PCRA court opined that this Court "concluded in a nearly identical claim on direct appeal, Detective Appleby properly testified to the information gathered during his investigation and presented his conclusion based upon his experience as a police officer, which testimony the jury was free to accept or reject." PCRA Court Opinion, 6/29/2018, at 10. As such, the PCRA court determined that the issue was previously litigated on direct appeal and that Appellant was merely re-labeling it and presenting it as a revised theory of relief in the PCRA setting. *Id.* at 9.

As a general rule, in order to be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that the allegation of error has not been previously litigated. 42 Pa.C.S.A. § 9543(a)(3). An issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue[.]" 42 Pa.C.S.A. § 9544(a)(2). However, our Supreme Court has also determined:

> Collateral claims of trial counsel ineffectiveness deriving from an underlying claim of error that was litigated on direct appeal cannot automatically be dismissed as "previously litigated." Rather, Sixth Amendment claims challenging counsel's conduct at trial are

analytically distinct from the foregone claim of trial court error from which they often derive, and must be analyzed as such.

**Commonwealth v. Puksar**, 951 A.2d 267, 274 (Pa. 2008) (citations omitted).

On direct appeal, the trial court determined that the detective's belief that Appellant was in one of the three vehicles was a credibility determination for the jury to decide. We agreed, opining:

> The detective testified to his belief based on his experience. In fact, he used the word "believe" three times in the course of the exchange. As the trial court determined, the detective's belief that Appellant was in one of the three vehicles constituted a credibility determination within the province of the jury. The jury was free to accept or reject any and all facts and conclusions to which the detective testified in deciding whether Appellant occupied one of the vehicles in the vicinity at the time surrounding the robbery.

**Stewart**, 2016 WL 5266553, at *7. Thus, the issue was previously litigated on direct appeal.

However, we are mindful that we must analyze Appellant's claim under the ineffective assistance of counsel rubric. We similarly conclude that Appellant's current collateral claim lacks merit. Because Detective Appleby testified regarding his beliefs, the jury was permitted to accept or reject all, part, or none of his testimony. **See Commonwealth v. Diggs**, 949 A.2d 873, 879 (Pa. 2008) ("The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses."). As such, we conclude that there is no merit to Appellant's claim that trial counsel was ineffective for failing to object to Detective Appleby's testimony.

Regarding the third issue we examine, Appellant claims that trial counsel was ineffective for failing to investigate and call Maritza Melendez and Rickie Hairston as defense witnesses.  Appellant's Brief at 25-30.  Initially, Appellant posits that the PCRA court erred in denying relief because he "purportedly did not attach a signed certification from these witnesses" to his PCRA petition. *Id.* at 26.  He claims that PCRA counsel satisfied the witness certification requirement under the PCRA by personally certifying the substance of each witness' testimony.  *Id.* at 27.   Appellant next contends that Melendez, his girlfriend at the time of the crimes, "would have provided an alibi for [Appellant] and testified that she was working with [Appellant] at another location at the time of the home invasion" and would have "contradict[ed] the Commonwealth's evidence that she drove the same type of vehicle used in the home invasion."  *Id.* at 28.   With regard to Rickie Hairston, Appellant avers:

> []Rickie Hairston, an individual identified as the possible other male involved in the robbery, was never called as a witness.  The Commonwealth's theory throughout the case was that two males and one female were the suspects in this case.  Detective Appleby testified that [Father] identified Rickie Hairston in a photo lineup as the suspect he believed was pointing the gun.  He further testified that Rickie Hairston was one of the males on video coming out of the subject vehicle.
>
> Mr. Hairston lives in LaFayette, Louisiana and has lived there since approximately 2012.  If called as a witness at trial, Mr. Hairston would have testified that he was in Louisiana at the time of the incident on January 6, 2014 and was not in the Harrisburg area.  This testimony would have cast further doubt on the Commonwealth's entire theory of [Appellant's] guilt[.]

- 10 -

*Id.* at 28-29 (record citations omitted).

To prove that trial counsel provided ineffective assistance for failing to call a witness, Appellant must demonstrate:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Brown*, 196 A.3d 130, 167 (Pa. 2018) (citation omitted).

Moreover, we have previously determined that a PCRA petitioner who seeks an evidentiary hearing on a claim that counsel was ineffective for failing to call alleged alibi witnesses is not required to attach sworn affidavits of proposed witnesses to his PCRA petition. *See Commonwealth v. Pander*, 100 A.3d 626, 641 (Pa. Super. 2014), *appeal denied*, 109 A.3d 679 (Pa. 2015). However, the PCRA petition must include "a signed certification as to each intended witness," setting forth the "witness's name, address, date of birth and the substance of the proposed testimony." *Commonwealth v. Brown*, 767 A.2d 576, 582 (Pa. Super. 2001); *see also* 42 Pa.C.S.A. 9545(d)(1)(ii) ("If a petitioner is unable to obtain the signature of a witness [], the petitioner shall include a certification, signed by the petitioner **or counsel,** stating the witness's name, address, date of birth and substance of testimony.") (emphasis added). Here, Appellant's counsel attached a certification, which he signed, to the PCRA petition setting forth the personal

- 11 -

information of Maritza Melendez and Rickie Hairston, as required above, as well as the substance of their testimony. As such, we agree with Appellant that the PCRA court erred by determining that the signed certification as presented was deficient.

However, the PCRA court alternatively examined the merits of Appellant's witness claim and determined that Appellant could not prove he was prejudiced by failing to call Melendez or Hairston. With regard to Melendez, the PCRA court determined that trial counsel's decision not to call Melendez was "a reasonable strategic decision" because her testimony "would have solidified identification of [Appellant] as the perpetrator." PCRA Court Opinion, 6/29/2018, at 11. Upon review of the certified record, we agree. At trial, counsel argued there was no physical evidence linking Appellant to the crimes and that the sole eyewitness, Father, did not identify Appellant as a perpetrator. The Commonwealth argued that Melendez and Appellant worked together to complete the crimes. As the trial court astutely noted, calling Melendez as an alibi witness would have only highlighted the fact that the two were together at the time of the crime, undermining counsel's strategy to distance Appellant from Melendez. Aside from Melendez's proffered testimony, Appellant does not identify additional evidence to support the bald assertion that he and Melendez were in another location at the time of the crimes. For all of the foregoing reasons, we agree with the PCRA court's

assessment that trial counsel had a reasonable strategy in not calling Melendez at trial.

With regard to Hairston, the PCRA court also concluded that counsel had a reasonable strategy in not calling Hairston as a witness at trial. PCRA Court Opinion, 6/29/2018, at 12. As the PCRA court notes, calling Hairston would have "hampered the entire defense theory" that Father identified Hairston as a perpetrator and "vehemently" denied that Appellant was responsible. *Id.* at 13. We agree. Father identified Hairston "as the man he believed may have been holding the gun." N.T., 6/9/2015, at 150. Detective Appleby testified that while watching surveillance videos of the three cars circling the subject residence, he "saw a male he believed to be Rick Hairston get out of one of those vehicles" at a nearby McDonald's. *Id.* at 151. Detective Appleby also testified that Hairston "went to Louisiana a few days after the robbery." *Id.* at 153. If Hairston testified that he was in Louisiana at the time of the crime, it would have cast doubt on Father's identification of Hairston and weakened Appellant's claim that Hairston was the actual perpetrator. As such, we do not deem trial counsel ineffective for failing to call Melendez and Hairston as witnesses.

Next, Appellant maintains that trial counsel was ineffective for failing to request a jury instruction pursuant to *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954), because Father did not have an opportunity to clearly view or identify the perpetrator. Appellant's Brief at 30-33. He contends that "[t]he

trial court's final charge regarding witness testimony and credibility was woefully inadequate for the *Kloiber* instruction." *Id.* at 32.

Our Supreme Court has determined:

Our case law makes clear that the need for a *Kloiber* instruction focuses on the ability of a witness to identify the defendant. *See Commonwealth v. Fisher*, 813 A.2d 761, 770–771 (Pa. 2002) (opinion announcing the judgment of the court) (providing no relief to PCRA petitioner based [on] *Kloiber* [] where witness, who knew defendant prior to shooting, failed to identify defendant at pre-trial line-up due to fear that identifying him would endanger her and her family); *Commonwealth v. Lee*, 585 A.2d 1084, 1087 (Pa. 1991) (finding *Kloiber* instruction inappropriate where fear of identifying defendant cannot be equated to failure to make identification); [*Commonwealth v.*] *Ali*, 10 A.3d [282,] 304 [(Pa. 2010)]("Any perceived weaknesses in N.M's testimony attributable to her tender years, the circumstances of the horrific experience, the subject matter, and her ability to recall details were matters of credibility for the jury as factfinder to decide; but those issues did not undermine N.M.'s actual physical ability to identify appellant at the time and place of the murder, so as to trigger the special identification testimony concerns underlying the *Kloiber* line of decisions.").

*Commonwealth v. Reid*, 99 A.3d 470, 490–491 (Pa. 2014). In such instances, where a witness' equivocal identification is based upon fear of reprisal, our Supreme Court has concluded that a *Kloiber* instruction is inappropriate and that a general jury charge on witness credibility is proper. *Id.*

In this case, Detective Appleby testified that Father acted strangely when asked to identify Appellant from a photo array. N.T., 6/9/2015, at 127-130. Detective Appleby testified that Father was "scared to death" when he pointed to a photograph of Appellant and said, "Definitely not him." *Id.* at

- 14 -

128-129. Detective Appleby stated that it was the only time in 17 years of law enforcement that he had seen such behavior. *Id.* at 128. In essence, Detective Appleby's testimony suggested that Father's behavior when viewing the photographic array indicated that he recognized Appellant, but stopped short of positively identify him due to fear. As our Supreme Court has made clear, a *Kloiber* instruction is not warranted where the fear of identifying a defendant cannot be equated to the failure to make an identification. Here, there is no dispute that the trial court gave the jury a general charge on credibility and we presume that the jury followed the trial court's instructions. *See Vucich*. As such, Appellant's *Kloiber* challenge fails.

Appellant also argues that trial counsel was ineffective for failing to use impeachment evidence derived from the police interrogation of S.M. Appellant's Brief at 33. In sum, Appellant posits:

> Here, [S.M.], the daughter of the victim [(Father)], had a prior relationship with [Appellant]. She was a key Commonwealth witness who provided a purported motive for the offense. She provided a recorded interrogation with Detective Appleby. During that interrogation, she had an attorney present. During that interview, she provided a number of inconsistent statements, as well as recanting exculpatory statements she made to police about [Appellant's] alleged involvement in the offense. Nevertheless, at no point in time was that recorded interrogation ever played or utilized, nor was she impeached with her own prior statements. Given the lack of direct evidence in the case, the failure to do so constituted ineffective assistance [of counsel].

*Id.* at 34 (citation omitted).

The PCRA court determined that "the record reflects that [] trial counsel properly focused on questioning [] inconsistencies in [S.M.'s] testimony."

- 15 -

PCRA Court Opinion, 6/29/2018, at 16. Upon review of the trial transcripts, we agree. Here, defense counsel cross-examined S.M. upon perceived inconsistences between her trial testimony and statements made to police. S.M. testified that she hesitated in telling the police that Appellant was the perpetrator because she "was scared for her life." N.T., 6/9/2015, at 60. S.M. also stated that she believed certain statements attributed to her were not accurately reflected in the police report. *Id.* at 64-65. As such, trial counsel adequately cross-examined S.M. at trial, in an attempt to impeach her. Finally, we note that trial counsel also questioned Detective Appleby extensively about his interactions and interviews with S.M., which showed that S.M. was reluctant and slow to reveal information to police. *Id.* at 120-129. He testified that she was extremely fearful "and it was difficult for her to tell [police] things about [Appellant.]" *Id.* at 129. Thus, while trial counsel impeached S.M. with her inconsistent statements, the Commonwealth provided evidence to explain them. As such, Appellant has failed to show he was prejudiced. Accordingly, there is no merit to Appellant's claim that trial counsel was ineffective for failing to impeach S.M. with her prior recorded conversation with police.

We turn now to address three claims that trial counsel was ineffective for failing to raise issues pertaining to sentencing. First, Appellant contends that he was improperly sentenced for multiple conspiracies – conspiracy to commit robbery, conspiracy to commit burglary, and conspiracy to commit

unlawful restraint.[5]   Appellant's Brief at 40-41.   Citing 18 Pa.C.S.A. §§ 903 and 906, Appellant argues that all of the crimes arose out of the same agreement or continuous relationship, namely "to obtain money inside a residence that was allegedly being held in a suitcase." *Id.* at 41.  As such, Appellant argues that he could only be convicted of one inchoate crime for his conduct. *Id.* at 40.   Therefore, Appellant argues that trial counsel was ineffective for failing to object to sentencing on multiple inchoate counts as set forth above. *Id.* at 41.

This issue implicates the legality of Appellant's sentence.[6] ***See Commonwealth v. Jacobs***, 39 A.3d 977, 982 (Pa. 2012) (opinion announcing the judgment of the court) ("[S]eparate sentences […] barred by Section 906's prohibition of multiple sentences for inchoate crimes […] relates to the legality of sentence[].").   An issue relating to legality of sentence presents a question of law for our review. *Id.* (citation omitted). "When addressing such questions of law, we employ a plenary scope of review, and our standard of review is *de novo*." *Id.*

We begin with the definition of conspiracy, which is as follows:

---

[5]   Appellant fails to mention that he was convicted of a fourth inchoate crime, conspiracy to commit false imprisonment.

[6] Appellant raised the issue in his PCRA petition and, thus, it is properly before us. ***See Commonwealth v. Ousley***, 21 A.3d 1238 (Pa. Super. 2011) (Although legality of sentence is subject to review within the PCRA, the claim must be raised in a PCRA petition and cannot be raised for the first time on appeal).

> **(a)** **Definition of conspiracy**.--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> >
> > (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a). "If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa.C.S.A. § 903(c). "A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime." 18 Pa.C.S.A. § 906.

In **Jacobs**, our Supreme Court examined the application of Section 906 in circumstances relevant to those currently before us:

> The full text of Section 906 of the Crimes Code, entitled "Multiple convictions of inchoate crimes barred," provides as follows: "A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime." 18 Pa.C.S.A. § 906. [...T]he Superior Court has interpreted "convicted" in Section 906 to mean the entry of a judgment of sentence, rather than a finding of guilt by the jury. **See Commonwealth v. Grekis**, 601 A.2d 1284, 1295 (Pa. Super. 1992) ("Section 906 is designed to eliminate multiple convictions, *i.e.*, judgments of sentence, for conduct which constitutes preparation for a single criminal objective."); **Commonwealth v. Maguire**, 452 A.2d 1047, 1049 (Pa. Super.

1982) (rejecting the defendant's argument that "convicted" in Section 906 is equivalent to the jury's verdict: "When the law speaks of a 'conviction,' it means a judgment, and not merely a verdict, which in common parlance is called a 'conviction.'"). [Accordingly,] it is not a violation of Section 906 for the jury to find a defendant guilty of multiple inchoate crimes designed to culminate in the same crime; a problem arises only when the trial court imposes multiple sentences for those inchoate crimes that are designed to culminate in the same crime.

\*             \*             \*

Applying Section 906, [our Supreme Court has] held that "inchoate crimes merge only when directed to the commission of the same crime, not merely because they arise out of the same incident." **Commonwealth v. Graves**, 508 A.2d 1198, 1198 (Pa. 1986) (*per curiam*). In determining whether inchoate crimes are directed to the commission of the same crime, [our Supreme Court has] taken a narrow view of the object crime. In **Graves**, for example, the defendant was convicted and sentenced for criminal conspiracy and criminal solicitation for his part in an incident in which he conspired with fellow gang members to assault three police officers, and individually solicited one gang member to murder one police officer. **Id.** at 1199 (Zappala, J., dissenting). Consecutive sentences were imposed for the conspiracy and solicitation. On appeal, [our Supreme] Court approved of the two sentences. [**Graves**] held that [] review of the record revealed that even though the two inchoate crimes arose out of the "same incident," they were directed at different ends, and therefore did not merge at sentencing: the defendant conspired to assault three police officers and discreetly solicited the murder of one of the officers. [**Id.**] at 1198. Thus, a person may be convicted and sentenced for two inchoate crimes that arise out of the same incident which were not designed to culminate in the commission of the same crime.

**Jacobs**, 39 A.3d 977, 982–983 (original brackets omitted; new brackets added).

Moreover, this Court has determined:

A single, continuing conspiracy is demonstrated where the evidence proves that the essential feature of the existing

- 19 -

conspiracy was a common plan or scheme to achieve a common, single, comprehensive goal…. A single, continuing conspiracy may contemplate a series of offenses, or be comprised of a series of steps in the formation of a larger, general conspiracy…. Therefore, where the evidence at trial is sufficient for the jury to infer that the essential features of the existing conspiracy were a common plan or scheme to achieve a common, single, comprehensive goal or end, then the conclusion that the conspiracy was a single, continuing conspiracy is justified.

**Commonwealth v. Troop**, 571 A.2d 1084, 1089–1090 (Pa. Super. 1990);

**see also Commonwealth v. Henkel**, 487 A.2d 1010, 1013 (Pa. Super.

1985) ("[C]onspiracy is not severable as to diverse crimes contemplated by a

single agreement[.]").

In determining whether a single or multiple conspiracy has been

established, we consider several relevant factors:

The factors most commonly considered in a totality of the circumstances analysis of the single vs. multiple conspiracies issue are: the number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and, the degree to which interdependence is needed for the overall operation to succeed.

**Commonwealth v. Davis**, 704 A.2d 650, 654 (Pa. Super. 1997) (ellipsis

omitted).

In this case, the entire sum of the PCRA court's analysis on this issue is

as follows:

[Appellant] argues that it was improper for the trial court to sentence [him] for multiple inchoate offenses, despite the fact that no evidence was presented establishing the natural

- 20 -

progression of events that took place on January 6, 2014, resulted from one common agreement.

In the absence of evidence establishing that multiple crimes resulted from one common agreement, an individual may be convicted and sentenced for multiple inchoate offenses. The [Pennsylvania] Supreme Court, in *Commonwealth v. Savage*, established "just as a single entrepreneur may enter into several separate yet similar joint business ventures with the same or different partners or investors at the same time, criminals in general and drug traffickers in particular may enter into more than one criminal conspiracy involving similar crimes at the same time, even in the same area." *Commonwealth v. Savage*, 566 A.2d 272, 277 (Pa. Super. 1989).

Evidence was never presented during the trial to establish that the progression of events directly emanated from one common agreement before the individuals entered the home. Accordingly, [the trial court] was proper to sentence [Appellant] for multiple inchoate offenses and [] reject [Appellant's] contention as meritless.

PCRA Court Opinion, 6/29/2018, at 19.

For the reasons that follow, we disagree. Here, when viewing the totality of the circumstances in this case, it is clear that there was a common plan or scheme to achieve a common, single, comprehensive goal – the theft of money thought to be stored inside the subject residence. Considering the factors in *Davis*, all of the crimes took place at the same time in the same location and were committed by the same cohorts acting in concert with one another. More specifically, the Commonwealth presented the testimony of S.M. and the investigating police officer showing that Appellant was led to believe that there was a large sum of money in a suitcase inside S.M.'s home. Approximately an hour before the crimes, Appellant asked S.M. if anyone was

home at the residence in question. While such facts may have suggested that Appellant and his confederates intended to burgle the residence while it was unoccupied, such a conclusion is a red herring, as other important evidence suggests otherwise. Father testified that the three conspirators knocked on the door and came directly into the residence without invitation and a gun drawn, demanded Father get on the floor, and then immediately tied his hands behind his back with zip-ties. N.T., 6/9/2015, at 19-22. Here, the Commonwealth presented evidence that Appellant and his cohorts arrived at the home with a firearm and zip-ties, which demonstrated their intent to procure the purported cash by any means, including the use of a firearm, physical force (or threat of force), and forcible restraint if someone was present. Thus, we disagree with the PCRA court's determination that there was no evidence suggesting that there was a progression of events from a common agreement or understanding.

Moreover, there was no evidence to suggest a freestanding criminal plot to rob Father, separate from the general plan to steal money purportedly stored at S.M.'s residence and use force against anyone present at the time. *See Graves*, *supra*. In fact, none of the conspirators took anything from Father's person. The only item stolen from the home was a blue suitcase, which the Commonwealth established through S.M.'s testimony was the object of the conspiracy. Thus, we conclude that Appellant's conduct was designed to culminate in the commission of only one general crime, namely, the theft

of money thought to be stored in a suitcase in the victims' home. *See Commonwealth v. Crocker*, 389 A.2d 601 (Pa. Super. 1978) ("18 Pa.C.S.A. § 906 explicitly bars appellant's conviction and sentencing for both criminal attempt and possession of an instrument of crime[; a]ppellant's conduct [of] nighttime entry into an enclosed Bell Telephone storage lot while in possession of cable-cutting tools was designed to culminate in the commission of only one crime:  theft of Bell Telephone's cable."; *compare Commonwealth v. Welch*, 912 A.2d 857 (Pa. Super. 2006) (conspiracy to commit robbery and attempted homicide were independent where conspirators were interrupted stealing an all-terrain vehicle, which led Welch to chase an eyewitness and shoot at him).  In this case, there is no evidence to suggest that Appellant agreed only to a burglary, but later agreed to a robbery based upon unanticipated, intervening factors.  Instead, the converse is true.  From the start, the conspirators were ready to commit a robbery, as evidenced by the materials they brought to the scene.

Furthermore, we reject the PCRA court's reliance on *Savage*.  In that case, this Court was tasked with determining whether state charges for conspiracy to deliver narcotics should be dismissed as barred under 18 Pa.C.S.A. § 111 (when prosecution barred by former prosecution in another jurisdiction), because the defendant had been charged already with the same crime in federal court.  The scope and nature of that case, however, was focused on a double jeopardy claim, wherein "the principle issue [was]

- 23 -

whether one or two groups of conspirators were involved; and, if two separate groups were involved, whether the separate group of conspirators nonetheless furthered a single broader conspiracy." *Savage*, 566 A.2d at 277-278. The Commonwealth argued that there were two separate cocaine distribution conspiracies involved, but we disagreed and discharged the state conspiracy charge. That case focused solely on double jeopardy and examined the overlap of different groups of alleged coconspirators in a larger narcotics distribution scheme. Here, as set forth in detail above, there was only one group of conspirators and the central inquiry was on sentencing for multiple inchoate crimes arising out of one single, general crime under Section 906. Thus, the trial court's reliance on *Savage* is misplaced and simply not applicable herein. Accordingly, for all the reasons set forth above, we discern that the PCRA court erred as a matter of law in concluding that Appellant was not entitled to relief on his illegal sentencing claim.

Accordingly, we turn now to discuss Appellant's remedy. Generally, when there is an error in sentencing a defendant to multiple inchoate crimes, we have the option to either remand for resentencing or to amend the sentence directly. *Commonwealth v. Ford*, 461 A.2d 1281, 1289 (Pa. Super. 1983). Normally, when sentences are imposed concurrently, we can amend where we will not upset the overall sentencing scheme. *See Commonwealth v. Martinez*, 153 A.3d 1025, 1033 (Pa. Super. 2016). In such instances, we vacate the concurrent sentence for the lesser offense and

let stand the sentence for the greater offense. **Ford**, 461 A.2d at 1298. However, in instances where consecutive sentences are imposed for inchoate offenses of equal grading, we have determined it "prudent to vacate and remand, leaving it to the sentencing court to decide which one of the [] inchoate convictions to let stand and the sentence to be entered in accordance thereto." **Id.** at 1289–1290. Finally, it is well-settled that:

> [I]f a trial court errs in its sentence on one count in a multi-count case, then all sentences for all counts will be vacated so that the court can restructure its entire sentencing scheme.

**Commonwealth v. Baney**, 187 A.3d 1020, 1023 (Pa. Super. 2018), *citing* **Commonwealth v. Bartrug**, 732 A.2d 1287, 1289 (Pa. Super. 1999), *appeal denied*, 747 A.2d 896 (Pa. 1999) (citations omitted) (holding that the PCRA court did not abuse its discretion in vacating entire sentence before resentencing, rather than addressing only illegal part of sentence); *see also* **Commonwealth v. Veon**, 150 A.3d 435, 456 (Pa. 2016) (remanding for resentencing where vacating sentence of imprisonment and restitution left the "comprehensive sentencing scheme unmoored from its foundation.").

Here, Appellant was convicted of conspiracy to commit burglary, conspiracy to commit robbery, conspiracy to commit false imprisonment, and conspiracy to commit unlawful restraint. The trial court imposed consecutive sentences for conspiracy to commit burglary, conspiracy to commit robbery, and conspiracy to commit unlawful restraint; no further penalty was imposed for conspiracy to commit false imprisonment. Burglary and robbery were

graded as first-degree felonies, unlawful restraint was graded as a first-degree misdemeanor, and false imprisonment was graded as a second-degree misdemeanor. Because of the consecutive nature of the sentences and differences in the grading of the offenses, we vacate the judgment of sentence for conspiracy to commit burglary, conspiracy to commit robbery, conspiracy to commit false imprisonment, and conspiracy to commit unlawful restraint and remand for the trial court to determine which of the highest-graded felonies (either burglary or robbery) to let stand and the sentence to be entered in accordance thereto. Moreover, having upset the entire sentencing scheme, we vacate all of the sentences imposed on all the remaining convictions and remand for resentencing consistent with this memorandum.

Appellant's next two issues challenge the ineffective assistance of counsel regarding the discretionary aspects of sentencing. Appellant contends that trial counsel and post-sentence counsel rendered ineffective assistance of counsel for failing to object to erroneous sentencing guidelines. Appellant's Brief at 35-38. Appellant claims that the trial court erroneously relied upon a sentencing guideline form that indicated that he was a repeat felony offender ("RFEL") when his prior record score indicated that it was actually "5." *Id.* at 35. Despite the Commonwealth's concession at sentencing that Appellant's prior record score was a "5" instead of RFEL for guideline purposes, Appellant contends that he was still sentenced in the aggravated range of sentences for those defendants with a prior record score of 5, as well as in the top of the

standard range of sentences for RFELs. *Id.* at 36-37. As such, Appellant claims that trial and post-sentence counsel were ineffective for failing to object to the trial court's use of erroneous sentencing guidelines. Finally, Appellant maintains that the trial court relied upon improper sentencing factors in fashioning his sentence and that trial and post-trial counsel were ineffective for failing to object. Appellant's Brief at 38-40. He claims that the trial court relied upon his "silence, protestation of innocence[,] and purported lack of remorse" at sentencing which resulted in an aggravated sentence. *Id.* at 39-40. However, given our disposition that resentencing is warranted, we need not address these issues. Appellant can raise any issues pertaining to the sentencing guidelines employed and the reasons the trial court relies upon in fashioning a new sentence at resentencing or in post-sentence motions.

Finally, Appellant contends that he was entitled to an evidentiary hearing under the PCRA. Appellant's Brief at 16-17. When reviewing the denial of a PCRA petition without an evidentiary hearing, we determine:

> whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing. When there are no disputed factual issues, an evidentiary hearing is not required.

*Commonwealth v. Hart*, 199 A.3d 475, 481 (Pa. Super. 2018) (internal citations and quotations omitted). Here, as set forth above, there were no issues of material fact requiring an evidentiary hearing. Accordingly, Appellant's final issue is without merit.

Convictions affirmed. Case remanded for resentencing in accordance with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/11/2019