2018 Pa Super 310

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                     : PENNSYLVANIA
                                     :
              v.                     :
                                     :
                                     :
JOHN HART,                           :
                                     :
         Appellant                   : No. 792 EDA 2018

Appeal from the PCRA Order Entered February 28, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001012-2005,
CP-23-CR-0004329-2005

BEFORE: PANELLA, J., OLSON, J., and McLAUGHLIN, J.

OPINION BY McLAUGHLIN, J.:                    **FILED NOVEMBER 21, 2018**

John Hart appeals from the order dismissing as untimely his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Hart maintains that the PCRA court erred in dismissing his petition without an evidentiary hearing. We vacate and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. The Commonwealth's case against Hart began when it received a letter on February 14, 2005, from Michael Keenan, an inmate housed at the same correctional facility as Hart. The letter was addressed to the Delaware County District Attorney's Office ("DA's Office") and detailed that Keenan was approached by Hart who "[kept] asking [him] to have someone kill his girlfriend." Notes of Testimony ("N.T."), Discovery Motion Hearing, 3/17/06,

at 22. After receiving the letter, the DA's office assigned Detective Thomas Worrilow to investigate the matter. *Id.* at 46-48. Detective Worrilow interviewed Keenan and charges were filed against Hart for a number of crimes including "the specific crime of soliciting Michael Keenan" to arrange the death of Hart's girlfriend. *Id.* at 50-51.

Hart's counsel, Mark Much, Esq., in anticipation of trial, filed a discovery motion for numerous documents. Relevant to this appeal, he sought "All letters written to the Delaware County District Attorney or law enforcement authorities by Michael Keenan relating to the defendant, John Hart." Omnibus Pretrial Motion, filed 8/10/05, at 8 ¶ 13 (unpaginated).

At a discovery hearing held on January 10, 2006, the Commonwealth stated that it "Provided counsel with all of the written materials, written letters sent by Mr. Keenan to Detective Worrilow relating to this case, or derivatively related to this case." N.T., Motion Hearing, 1/10/06, at 10. In response, Attorney Much explained to the court that he had provided a three-page letter to the Commonwealth that contained all the discovery he had received at that point. *Id.* at 27. The following items were listed regarding Keenan: "16 page typed statement given by Michael Keenan on March 5, 2005; 4 page writing submitted to District Attorney by Michael Keenan; 1 page writing prepared by Michael Keenan with fingerprint analysis; and Michael Keenan's criminal record." Discovery Letter, dated 1/10/06, at ¶¶ 9-12. The court explained that "All correspondence involving the Commonwealth and the defendant as well

as all correspondence between Michael Keenan" were discoverable. N.T., Motions Hearing, 1/10/06 at 27-28.

On March 2, 2006, during a second discovery hearing, Attorney Much made an oral motion to suppress all oral and written statements made by Keenan. N.T., Motions Hearing, 3/2/06, at 6. Counsel explained that the Commonwealth did not provide "Copies of all letters written to the Delaware County District Attorney or law enforcement authorities by Michael Keenan," as ordered by the trial court. *Id.* at 6-7. The Commonwealth again assured the court that it had provided defense counsel, "Any correspondence between Michael Keenan and the Commonwealth regarding this or other defendants." *Id.* at 28. The court then instructed the Commonwealth to "Double check" its discovery representations and continued the hearing. *Id.* at 35-36.

On March 17, 2006, the trial court held a third discovery hearing, and both Keenan and Detective Worrilow testified. The purpose of the hearing was to "help identify what was discoverable." N.T., 3/17/06, Motions Hearing, at 74. Keenan's relevant testimony included that he did not think he would get favorable treatment from the Commonwealth or help on his pending criminal cases when he wrote the February letter. *Id.* at 20, 22, 41. A portion of Attorney Much's cross examination of Keenan consisted of questions to determine if the February letter was "the only letter." *Id.* at 23. Attorney Much also acknowledged that he received a copy of the February letter. *Id.* at 23. Detective Worrilow then testified that he never promised Keenan anything in return for his information:

Q: Did you ever offer Michael Keenan anything of value in exchange for his information that he was giving you?

A: No, sir.

Q: Did you ever make any promises to him about what he would get in return for his information?

A: No, sir.

*Id.* at 52. Towards the end of the hearing, the following was discussed:

The Court: Okay. We - - then let's turn to another issue. That's the issue of outstanding discovery in regards to **4329-05**. Other than the information that's going to be addressed in the anticipated order that will be forwarded to the prison, are there any other loose ends, other things that need to be provided to the defendant?

[Assistant District Attorney ("ADA")]: Mr. Much and I discussed this before the motion begin [sic] this morning. You should understand that there is a large volume of materials that have been copied and turned over already. And I will agree to an order that directs the Commonwealth to turn out [sic] over any and all materials relating to this investigation. And Mr. Much and I agree that he can craft . . .

The Court: Well, you've already told the Court again and again you've done that.

\*\*\*

Mr. Much: Judge, what [the ADA] and I had discussed before the hearing was that I was going to go back to my office today, actually this afternoon, and I was going to have George go through the discovery that's been provided. And if we feel that we are not – we don't have something then we're going to identify it in a letter to [the ADA]. And he's either going to provide it or give us a reason why he doesn't need to or doesn't . . .

The Court: If there's a problem the Court needs to be advised quickly.

***Id.*** at 101-102, 104-105 (emphasis added). The trial court denied counsel's oral motion to suppress on April 4, 2006.

On June 27, 2006, Hart pled guilty to intimidation of witnesses or victims for his act of soliciting Keenan to kill his girlfriend.[1] The same day he also pled guilty to simple assault and stalking for separate crimes unrelated to the February letter. Hart did not file a direct appeal. In October 2010, Hart filed his first *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended petition. The PCRA court denied the petition, and this Court affirmed. ***See Commonwealth v. Hart***, 63 A.3d 817 (Pa.Super. 2012) (unpublished memorandum).

On November 17, 2017, PCRA counsel filed the instant petition giving rise to this appeal. The petition alleged that appellate counsel had uncovered in the DA's files four letters from Keenan to Detective Worrilow while the charges in reference to the February letter were pending against Hart:

> On September 19, 2017, while reviewing the contents of the District Attorney's file in CP-23-CR-**0004329-2005**, [Hart] uncovered four letters which had been written by Michael Keenan to Detective Worrilow during the pendency of the prosecution of CP-23-CR-0001012-2005 and CP-23-CR-**0004329-2005**. The letters were never produced to Attorney Much or [Hart], but were uncovered directly from the District Attorney's file by happenstance through civil litigation unrelated to the prosecution of these two cases.

PCRA Petition, filed 11/17/17, at 4 ¶ h (emphasis added).

_____

[1] 18 Pa.C.S.A. § 4952(a)(3).

- 5 -

In the first letter, which is not dated, Keenan states, "I'll do what I got to do as far as testafying [sic] but what I want is my probation hearing in front of Koudelous right along with my case." *Id.* at Ex. F-4. In the second letter dated October 19, 2005, Keenan asks Detective Worrilow, "Please talk to the DA and find out what the hell is going on with me. My court date is November 22nd and if the DA has no deal for me I plan on telling the judge everything." *Id.* at Ex. F-1. In the third letter dated January 10, 2006, the same date as the first discovery motion hearing, Keenan states, "You told me that I will definitly [sic] be going home. You promised and you told me. . . You told me not to worry, I will be going home." *Id.* at Ex. F-2. In the last letter, which is undated, he wrote in part "You told me a month ago that I would be out in a couple weeks. . . Let the D.A. cas [sic] explain to Erin [the victim] and her parents why I didn't testafy [sic]!" *Id.* at Ex. F-3.

In its response to the petition, the Commonwealth claimed that "Counsel Much stated 28 items of discovery were provided [sic] him by the prosecutor Michael Galantino, Esquire, including Keenan letters." *See* Commonwealth's Answer to Petition Filed Under the Post-Conviction Relief Act (PCRA), filed 12/8/17, at ¶ 7(b)(c) (citing to Discovery Letter dated 1/10/2006). It also claimed that Keenan's letter dated January 10, 2006 was provided to counsel. *Id.* at ¶ 9. Hart then filed a reply brief, denying the Commonwealth's assertion that Attorney Much received any of the four letters. In a certification from

Attorney Much attached to the reply brief, Attorney Much expressed the following:

> "I do not recall receiving copies of the four letters attached to this certification prior to the guilty plea on June 27, 2006. I believe I first became aware of these letters when they were sent to me by Conor Wilson, current counsel for Mr.Hart, in November 2017."

Reply Brief and Answer to New Matter, filed 12/22/17, at Attachment A.

The PCRA court issued notice of its intent to dismiss the petition without a hearing, concluding that "[n]o genuine issues concerning any material fact exist and [Hart] is not entitled to post-conviction relief. No purpose would be served by any further proceedings." Notice of Intent to Dismiss, dated 1/22/18 at 1 (unpaginated);[2] *see* Pa.R.Crim.P. 907. It also explained that Hart's petition was untimely and did not satisfy the "after discovered facts exception." Notice of Intent to Dismiss, at ¶ 12. Specifically, "[Hart] has not alleged why the after discovered evidence at issue here could not have been discovered between his plea in 2006 and September 19, 2017 . . . ." *Id.* at ¶ 26. Additionally, since "[t]wo of the letters attached to the Petition are not dated . . . this [c]ourt has no way of ascertaining when they were written or received and could have most certainly been received after the discovery hearing." *Id.* at ¶ 27. Hart replied to the 907 notice, and the PCRA court dismissed the petition on February 28, 2018. This timely appeal followed.

---

[2] The notice was docketed on January 23, 2018. *See* CP-23-CR-0004329-2005.

On appeal, Hart asks us to review the following issue:

Did the trial court not err in dismissing [Hart's] Post Conviction Relief Act petition, which was filed on November 17, 2017, without conducting an evidentiary hearing in violation of Pa.R.Crim.P. 908(a)(2), where [Hart] raised genuine issues of material fact in his petition and reply brief, filed December 22, 2017, and submitted an affidavit of a central witness certifying the factual discrepancy to be raised at a hearing?

Hart's Br. at 4.

First, we address the PCRA court's contention that Hart's petition was untimely. *See Commonwealth v. Rizvi*, 166 A.3d 344, 347 (Pa.Super. 2017). A petitioner has one year from the date the judgment of sentence is final to file a first or subsequent PCRA petition, unless a statutory exception to the one-year deadline applies. *See Commonwealth v. Burton*, 158 A.3d 618, 701 (Pa. 2017). A judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

Beyond a year, a petitioner must plead and prove at least one of the time-bar exceptions. These exceptions are:

(i)     the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). A petitioner must raise the exception within 60 days of the date that the claim could have been raised. ***See*** 42 Pa.C.S.A. § 9545(b)(2).

Hart's judgment of sentence became final on July 27, 2006, when the time to appeal to this Court expired. ***See*** Pa.R.A.P. 903. Therefore, any petition filed by July 27, 2007, would have been timely. Thus, the instant petition filed a decade later is untimely unless an exception applies. As stated above, Hart pled the newly discovered facts exception. Hart had until November 20, 2017, to file a petition based on his assertion that he discovered the letters on September 17, 2017. ***See*** 1 Pa.C.S.A. § 1908 ("Whenever the last day of such period shall fall on Saturday or Sunday, . . . such day shall be omitted from the computation."). The Commonwealth does not dispute that Hart raised the claim within 60 days of the date on which he could have first raised it. ***See*** Commonwealth's Br. at 2-20; ***see also*** 42 Pa.C.S.A. § 9545(b)(2).

When reviewing the denial of a PCRA petition, this Court's standard of review is limited "to whether the PCRA court's determination is supported by evidence of record and whether it is free of legal error." ***Commonwealth v. Pew***, 189 A.3d 486, 488 (Pa.Super. 2018). When reviewing the denial of a

PCRA petition without an evidentiary hearing, we "determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." ***Commonwealth v. Burton***, 121 A.3d 1063, 1067 (Pa.Super. 2015) (quoting ***Commonwealth v. Springer***, 961 A.2d 1262, 1264 (Pa.Super. 2008)), *affirmed*, 158 A.3d 618 (Pa. 2017). "[W]hen there are no disputed factual issues, an evidentiary hearing is not required . . . ." ***Commonwealth v. Morris***, 684 A.2d 1037, 1042 (Pa. 1996). We review the PCRA court's legal conclusions *de novo*. ***See Burton***, 121 A.3d at 1067.

The newly discovered facts exception, Section 9545(b)(1)(ii), relates to whether a court has jurisdiction to consider an untimely petition. ***See Burton***, 158 A.3d at 629. It does not require a merits analysis. ***See Commonwealth v. Bennett***, 930 A.2d 1264, 1272 (Pa. 2007) (holding merits analysis is not required for newly discovered facts exception). A petitioner satisfies the newly discovered facts exception when the petitioner pleads and proves that "(1) the *facts* upon which the claim [is] predicated were *unknown* and (2) could not have been ascertained by the exercise of *due diligence*." ***Bennett***, 930 A.2d at 1272 (citing 42 Pa.C.S.A. § 9545(b)(1)(ii) (emphasis added)). Due diligence "requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief," but does not require "perfect vigilance [or] punctilious care." ***Burton***, 121 A.3d at 1071.

Here, Hart properly invoked the newly discovered facts exception at Section 9545(b)(1)(ii). Hart's petition explained that he did not know of the existence of these letters and supported this contention with a certification from his trial counsel. He also asserted that these letters could not have been ascertained through due diligence as he was granted otherwise-restricted access to the DA's office files, in connection with an unrelated civil matter. **See** PCRA Petition at 4 ¶ h; **see also** Reply Br. at ¶ 8. Additionally, he noted "the Commonwealth represented to the Court that it had turned over to the defense all letters Michael Keenan wrote" to the DA's office or law enforcement. Reply Br. at ¶ 8. Thus, Hart could not be expected to assume that the Commonwealth may not have been forthright when it reassured him that no other correspondence existed. **See Commonwealth v. Davis**, 86 A.3d 883, 890-91 (Pa.Super. 2014) (stating due diligence does not require defendant to make unreasonable assumptions such as assuming Commonwealth's witnesses committed perjury when stating that no deal was offered to them by the Commonwealth). Moreover, no amount of "reasonable efforts" to find these letters would have gained him access to the DA's files as they are not public records. **See, e.g.,** 65 P.S. § 67.708(b)(16) ("a record of an agency relating to or resulting in a criminal investigation…" is not a public record for purposes of Right to Know law).

While the PCRA court concluded that Hart did not present genuine issues of material fact to warrant an evidentiary hearing, we disagree. Here, it is

disputed as to whether these letters were given to Hart. The Commonwealth maintains that the letters were passed on to trial counsel while Hart maintains that they were not. Thus, there are "disputed factual issues," regarding these letters and as a matter of law the court was required to order an evidentiary hearing. **Morris**, 684 A.2d at 1042; **see** Pa.R.Crim.P. 908(A)(2) (the judge shall order a hearing when a PCRA petition raises material issues of fact).

Therefore, we vacate the order of the court and remand this case for the PCRA court "acting as fact finder," to determine whether Hart has met "the 'proof' requirement under section 9545(b)(1)(ii)," *i.e.*, whether the letters were in fact unknown to Hart and whether he exercised due diligence to obtain the letters. **Bennett**, 930 A.2d at 1274.[3]

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/21/18</u>

---

[3] In light of this disposition, we do not address Hart's remaining claims of an alleged **Brady** violation and ineffective assistance of counsel. **See** Hart's Br. at 14, 22.