**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHNTAE LAVELL ALEXANDER | : | |
| | : | |
| Appellant | : | No. 1283 WDA 2018 |

Appeal from the PCRA Order Entered August 13, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000118-2015

BEFORE:  GANTMAN, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JUNE 25, 2019**

Johntae Lavell Alexander appeals from the denial of his request for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. He maintains that the trial court erred in denying his PCRA petition that raised claims of ineffective assistance of counsel ("IAC"). We affirm.

The Commonwealth charged Alexander with Possession with Intent to Deliver (PWID)[1] along with other narcotics related offenses. Alexander filed a motion to suppress challenging the search and the validity of his consent to the search. At the hearing on the motion, the Commonwealth presented the following evidence from Sergeant Matthew Fischer.

Sergeant Fischer received information from a confidential informant ("CI") that Alexander "would be traveling back to Erie, PA from the State of

---

[1] 35 P.S. § 780-113(a)(30).

Michigan carrying a quantity of heroin." N.T., Suppression Hearing, 6/3/15, at 4. Prior to this conversation, Sergeant Fischer had never used this CI. *Id.* at 22. The CI told Sergeant Fischer that in his past experience "any time that Mr. Alexander did go to the Michigan area, he would return with a quantity of heroin." *Id.* at 6. The CI gave the specific date that Alexander would be returning by train, "described [Alexander] physically," and knew what kind of vehicle he drove, a white Mercedes. *Id.* at 5. Additionally, the CI told Sergeant Fischer where he believed Alexander lived and the person living with Alexander. *Id.* at 6.

Sergeant Fischer knew Alexander prior to receiving the information from the informant. *Id.* at 19. He also knew that Alexander owned a white Mercedes. *Id.* at 5-6. Sergeant Fischer arrived at the train station on the date that the CI gave and observed Alexander leaving the train station.

Q [Assistant District Attorney ("ADA")]: Okay. All right. Did you go to the train station on October 4th of 2014?

A [Sergeant Fischer]: I did.

***

Q: Okay. Was the train on time?

A: No, it was not.

***

Q: Okay. Did you leave and come back to the train station.

A: I did.

***

Q: . . . Okay, did the train that you were waiting for eventually arrive?

A: It did.

Q: Okay. And when the train arrived, where were you at?

A: I was standing out in front of the train station where we were actually watching the tracks to physically see the train arrive.

Q: Okay. Did you see the passengers exit the train?

A: I did not, no.

Q: Okay. Did you see - - are you familiar with what Mr. Alexander looks like?

A: Yes.

Q: Did you see Mr. Alexander get off the train or in the train station area?

A: I saw him approach the stairwell where I was stationed at the bottom of.

*Id.* at 6-7, 9-10.

When Alexander saw Sergeant Fischer, he "walked around this building eventually coming back to the south side of the stairs - - or south side of this small building where there was a small freight elevator." *Id.* at 10. Sergeant Fischer and fellow officers followed Alexander and found him "hiding back in this cubbyhole where this freight elevator is." *Id.* Following a consent to search, Sergeant Fischer recovered heroin from Alexander's groin area. *Id.* at 14, 17-18.

The trial court denied the motion to suppress and Alexander subsequently pled guilty to PWID. The trial court sentenced him to five to ten years' incarceration. He did not file a post-sentence motion or direct appeal.

In June 2016, Alexander filed a timely PCRA petition, alleging claims of IAC. In part he claimed that trial counsel was ineffective for failing to challenge the lawfulness of the stop. *See Commonwealth v. Alexander*, No. 1631 WDA 2016 (Pa.Super. 2017) (unpublished memorandum). The PCRA court denied the petition without an evidentiary hearing. Alexander appealed and this Court reversed the order. We remanded the case, concluding that "[t]he record confirms [Alexander's] assertion that his counsel failed to 'fully litigate' and 'really delve into the reliability of the tip and the circumstances under which it was received.'" *Id.* at 16. We ordered that the trial court hold an evidentiary hearing, "at which the parties shall address all three prongs of the ineffective assistance test stated in [*Commonwealth v.*] *Fulton* [, 830 A.2d 567, 572 (Pa. 2003)]." *Id.* at 17.

Upon remand, the PCRA court held two evidentiary hearings. Trial counsel, David Ridge, Esquire, and Alexander testified at the first hearing and Sergeant Fischer and Lieutenant Jonathan Nolan testified at the second hearing. Regarding the issue of the lawfulness of the stop, "Attorney Ridge could not recall why he did not pursue this issue, even after the trial court gave him time in which to file a supplement to his Motion to Suppress, in order to raise the issue of the validity of [Alexander's] initial stop at the train station." PCRA Court Opinion ("PCRA Ct. Op."), filed 8/13/18, at 8.

Sergeant Fischer testified similar to his testimony at the suppression hearing with the exception of some additional details.

- 4 -

Q [ADA]: All right. And other than that information that the CI provided to you, what other information [did] you receive from the CI regarding Mr. Alexander?

A [Sergeant Fischer]: He gave us some biographical information as to his size, age, his hair style, type of vehicle he was driving, when he would be arriving.

***

Q [PCRA Counsel]: All right. And this confidential informant was able to describe for you, I think you talked about a physical description of a vehicle that matched something that you knew about Mr. Alexander?

A: That's correct.

Q: Okay. Your prior dealings with Mr. Alexander, I think your testimony was, was two years prior to October 4th, 2014, correct?

A: Yes, ma'am.

N.T., Evidentiary Hearing, 1/23/18, at 7, 23.

The PCRA court denied Alexander's IAC claim and concluded that the claim lacked arguable merit because "a motion to suppress on the basis of [Alexander's] initial stop at the trial station would have been denied on the basis of [*Commonwealth v.*] *Brown* [, 996 A.2d 473 (Pa. 2010)] and [*Alabama v.*] *White* [, 496 U.S. 325 (1990)]. PCRA Ct. Op. at 12. This timely appeal followed.

Alexander raises one issue on appeal: "Did the PCRA court err when it determined that [Alexander] had not pleaded and proven his claim of ineffectiveness, namely, that the trial counsel's failure to challenge the lawfulness of the stop caused petitioner to enter an unknowing, involuntary, and unintelligent plea?" Alexander's Br. at 6.

- 5 -

Our review of the denial of a PCRA petition is limited "to whether the PCRA court's determination is supported by evidence of record and whether it is free of legal error." **Commonwealth v. Hart**, 199 A.3d 475, 481 (Pa.Super. 2018) (quoting **Commonwealth v. Pew**, 189 A.3d 486, 488 (Pa.Super. 2018)). "We review the PCRA court's legal conclusions *de novo*." **Id.**

"Counsel is presumed to have been effective." **Commonwealth v. Andrews**, 158 A.3d 1260, 1263 (Pa.Super. 2017). Thus, a petitioner challenging the effectiveness of counsel must establish all of the following: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different." **Fulton**, 830 A.2d at 572. The petitioner must establish all of the above prongs or the ineffectiveness claim fails. **See Commonwealth v. Dennis**, 950 A.2d 945, 954 (Pa. 2008) (stating that failure to satisfy one prong "requires rejection of the ineffectiveness claim").

In the instant case, the parties agree that Alexander was subjected to an investigative detention and therefore the police officers needed to have had a "reasonable suspicion that criminal activity was afoot." **See Brown**, 966 A.2d at 477. "Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances." **Id.** Where an investigative detention is based on

information from a known informant, it "may carry sufficient 'indicia of reliability' to justify an investigative detention." **Id.** (citation omitted).

Here, the PCRA court concluded that Alexander failed to establish that his claim had arguable merit. In support of this conclusion, it stated that this case was on point with **Brown** and therefore no relief was due. **See** PCRA Ct. Op. at 8.  The Court in **Brown** held that an officer had reasonable suspicion to stop Brown based on a tip from a known informant. 996 A.2d at 479. The informant told the police officer "that Brown would be going to a particular area, around a particular time, in a specific make of vehicle, and would be dealing prescription drugs." **Id.** at 478-79. Our Supreme Court concluded that this information was "corroborated through police investigation" and thereby "gave rise to reasonable suspicion sufficient to warrant an investigative detention." **Id.** at 479.

Alexander argues that the informant's tip was not sufficient to justify his investigative detention. **See** Alexander's Br. at 36. He maintains that "**Brown** is distinguishable" from the instant case because Sergeant Fischer never used the CI before and at the evidentiary hearing Sergeant Fischer did not testify "that the informant predicted [Alexander] would return with drugs." **Id.** at 37. He also claims that Sergeant Fischer "did not corroborate some of the biographical information provided to him by the informant." **Id.** Specifically, whether or not Alexander resided at the address the informant gave. **See id.** at 37-38 (noting that Sergeant Fischer "testified that, in his past experience

- 7 -

with [Alexander] he did not recall him living" at the address given by informant).

We agree that unlike **Brown**, the informant here was never used previously. However, **Brown** is instructive and otherwise similar to the instant case. Similar to **Brown**, "[t]he informant in this case was not anonymous, and the tip consisted of more than mere description." **Brown**, 996 A.2d at 479. The tip alerted officers to criminal activity by Alexander on a particular day and at a particular place. Additionally, officers conducted an independent investigation to corroborate the information given. Sergeant Fischer was aware at the time that he spoke with the informant that Alexander drove a white Mercedes. He also went to the train station, waited for the train returning from Michigan, and observed Alexander leaving the train station.[2] Further, when Alexander saw the officers at the train station, he turned away and hid in a freight elevator which indicated his consciousness of his guilt. **See Commonwealth v. Smith**, 146 A.3d 257, 263 (Pa.Super. 2016) (stating flight is consciousness of guilt). The facts collectively were sufficient to give officers reasonable suspicion to stop Alexander. As such, his claim fails as it lacks arguable merit and we affirm the PCRA court's order denying his PCRA petition. **See Brown**, 996 A.2d 479; **see also Dennis**, 950 A.2d at 954.

Order affirmed.

_____

[2] We are unpersuaded by Alexander's argument regarding Sergeant Fischer's omission at the evidentiary hearing in reference to the heroin as he testified at the suppression hearing that the CI told him that Alexander would be returning with heroin. **See** N.T., Suppression Hearing at 4.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/25/2019