J-S03008-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAWRENCE BRENT SIMMONS | : | |
| | : | |
| Appellant | : | No. 422 WDA 2019 |

Appeal from the Order Entered February 12, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000104-2013

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                          FILED MAY 27, 2020

Lawrence Brent Simmons appeals the denial of his request for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

In 2014, Simmons pled guilty to third-degree murder, robbery, and aggravated assault.[1] The Commonwealth proffered the following facts at Simmons' guilty plea hearing:

> [O]n or about December 7th, 2012, a male named Terry James, and a female named Danielle Swogger, were residing at 2129 Rhine Street -- R-H-I-N-E -- in an apartment at that address. They were residing together. Mr. James at the end of this incident ends up being the deceased in this episode. Miss Swogger survives this episode and would have been, in all likelihood, the first witness called by the Commonwealth. Her testimony would be that on

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(c), 3701(a)(1)(i), and 2702(a)(1), respectively.

December 7th, 2012, she and Mr. James were getting ready to go out. It was an anniversary or a birthday of theirs – I don't recall which. But they were getting ready to go out to celebrate. Miss Swogger heard a knock at the door and looked through the peephole and saw the defendant, Mr. Simmons. She let Mr. James know that [Simmons] was there. [Simmons] to Miss Swogger and Mr. James had the nickname "Red." Miss Swogger says "Red" is there. Mr. James tells Danielle to open the door. She does so. At that point in time she had to bend down to move a drill that was there for some repairs that were being done. And when she stood up, there was another unnamed co-conspirator -- actually two unnamed co-conspirators --coming in the door with Red. One of the co-conspirators, who was the shorter of the two, had a gun to her head and in her face. [Simmons], told them to move, and then basically in concert, they moved and pushed Miss Swogger over towards the table that is sort of in between multiple rooms in this apartment, between the living room and the kitchen. At that point in time, they are standing near the table. [Simmons] eventually tells the shorter co-defendant to sit Miss Swogger on the end of the couch, so she is then seated on the arm of the couch.

\* \* \*

So, once Miss Swogger is seated on the couch, she would testify that she repeatedly heard these three gentlemen asking where the money was, if they had money. Miss Swogger answered, "No." And I believe Mr. James said it was in the kitchen. Eventually she would testify that [Simmons] told the shorter co-conspirator to hit Miss Swogger to make her shut up. They had been telling her to "shut up" repeatedly, as well. So, the shorter co-conspirator strikes Miss Swogger in the head with the butt of the gun that he was holding. Miss Swogger would testify that that was the only gun that she actually saw. She would be unable to testify that [Simmons] had a gun in his hand, but she would clarify her testimony from the preliminary hearing by saying she didn't see a gun in his hand, but she in no way was saying that he absolutely positively did not have a gun, she just did not see it. Once she was hit in the head, her forehead was cut and she fell backwards onto the couch into a lying position. Again, she was told to "shut up." She grabbed the pillows from the couch and covered her face.

Prior to being hit on the head, Mr. James had already been knocked to the ground in the kitchen area. She does not know how he got there to the ground, but he was already on the ground by the time she was knocked backwards onto the couch. At that point, all three of the co-conspirators were asking where the money was, repeatedly. Mr. James said, "In the kitchen." At some point Miss Swogger could hear [Simmons,] who was the only voice she recognized, say, "Shoot him," and hears three gunshots. Then she hears noises consistent with individuals gathering items. She still has her face covered through this whole thing. . . .

\* \* \*

The Commonwealth would have also called Lakeysh Collins. That's L-A-K-E-Y-S-H C-O-L-L-I-N-S. She would testify that she came home to her house on December 7th, 2012, at approximately -- well, she gives an exact time of 8:39 p.m., and [Simmons] was on her porch when she got home. They both went inside. [Simmons] was nervous and said, "I think I killed Stink." That's S-T-I-N-K. That is the nickname for Terry James. [Simmons] said that he shot Stink twice in the head and he tried to shoot Danielle, but his gun jammed, is what Miss Collins testified to.

\* \* \*

Commonwealth would have also called Dr. Joseph Deltondo, a forensic pathology. That's D-E-L-T-O-N-D-O. He performed the autopsy in this matter. He would have testified that he examined Mr. James and found that there were three gunshot wounds, that those three gunshot wounds were the cause of death in this case, and those gunshot wounds were to the right lateral chest, also a gunshot wound to the right back and another gunshot wound to the right lateral shoulder. All three gunshot wounds caused internal damage that resulted in Mr. James' demise.

N.T., Guilty Plea Hearing, 3/10/14 at 10-16.

The trial court imposed a sentence of 15 to 35 years' incarceration on March 10, 2014. Simmons did not file a post-sentence motion or direct appeal.

Simmons filed the instant pro se PCRA petition, his first, in July 2018, claiming the newly-discovered fact exception to the PCRA's time-bar. He argued that in July 2018, he discovered that the Attorney General's Office had charged a detective involved in his case with numerous crimes unrelated to his case, including obstruction of justice and tampering with evidence. PCRA Petition at 2, Exhibit A. According to Simmons, the allegations against the detective were that she "told . . . lies in her investigation into two (2) 2014 murders, one of which led to the false arrest of a man for murder." Id. After this discovery, "[Simmons] realized that his plea counsel . . . gave him bad advice which induced him to plead guilty, and had counsel not done so, [Simmons] would not have pled guilty, and opted to go to trial." Id. He alleged that he could not have discovered this information in time for trial through due diligence, "because once counsel gave him the advice not to go to trial based on the witness's [sic] statements on numerous occasion, there was no reason at that time to disbelieve counsel." Id. at 3-4.

Relevant to this appeal, Simmons also claimed that counsel "influenced him to enter the guilty plea [because] he was misled by counsel's erroneous advice that if he were to go to trial, he'd be convicted of first-degree murder, and receive a life sentence namely, because the Commonwealth intended to call two (2) or three (3) witnesses." Id. at 4. He alleged that one witness, Danielle Swogger, would have testified that Simmons was a co-conspirator in the murder and another witness, William Holt, would have testified that

Simmons admitted "that [Simmons] was doing a robbery and had to shoot someone." Id. at 5.

The PCRA court appointed counsel who filed a Turner/Finley letter and a Petition to withdraw as counsel.[2] Counsel stated in his letter that Simmons' claim regarding his discovery of the indictment did not satisfy the newly-discovered fact exception because "[b]y pleading guilty [Simmons] waived his claim of newly-discovered evidence." Turner/Finley Letter, filed 1/11/19, at 6 (unpaginated). The PCRA court issued notice of its intent to dismiss the petition without a hearing, and Simmons responded to the notice. See Pa.R.Crim.P. 907.

The PCRA court concluded that Simmons met the newly-discovered fact exception to the time-bar and had not waived the claim. PCRA Ct. Op., filed 7/1/19, at 6-7. However, it rejected his substantive claims, which it considered to be assertions of new evidence unavailable at the time of trial and plea counsel's ineffectiveness. It concluded Simmons had waived the new evidence claim by pleading guilty, and rejected it on the merits because it found it "highly unlikely" that the new evidence, if admitted at trial, would have resulted in a different outcome. See id. at 12. The court turned aside the ineffectiveness claim based on PCRA counsel's Turner/Finley letter, stating that if counsel "believes the Defendant's claims are frivolous and

_____

[2] Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988); Commonwealth v. Finley, 550 A.2d 213 (Pa.Super. 1988) (en banc).

- 5 -

meritless, so does this Court." Id. at 14. It thus denied the PCRA petition and granted counsel's petition to withdraw. This timely appeal followed.

Simmons presents the following issues on appeal:

1. Whether the lower court erred in dismissing [Simmons'] PCRA without an evidentiary hearing where PCRA counsel rendered ineffective assistance by filing a defective Finley letter, stating [Simmons] waived his claim of newly-discovered evidence, and finding trial counsel not ineffective.

2. Whether Trial/Plea counsel was ineffective by inducing [Simmons] to plea[d] guilty, where his pleas was [sic] unknowingly, and unintelligently made through trial counsel's misguided influence.

3. Whether [Simmons'] PCRA petition was/is timely filed under 42 Pa.C.S. §9545(b)(1)(ii), the newly-discovered fact exception to the time bar.

Simmons' Br. at 4.

Taking Simmons' last issue first, Simmons asserts that his petition was timely under the newly-discovered fact exception to the time-bar. "We review the denial of PCRA relief for a determination of whether the PCRA court's findings are support by the record and free of legal error." Commonwealth v. Johnson, 179 A.3d 1105, 1113 (Pa.Super. 2018), appeal denied, 197 A.3d 1174 (Pa. 2018).

A petitioner has one year from the time his judgment of sentence is final to file a timely PCRA petition. 42 Pa.C.S.A. § 9545(b)(1). Beyond that one-year deadline, a court does not have jurisdiction to entertain the petition unless the petitioner pleads and proves at least one of the time-bar

exceptions. Among the exceptions is the so-called newly-discovered fact exception, which requires a petitioner to plead and prove that "1) 'the facts upon which the claim was predicated were unknown' and 2) 'could not have been ascertained by the exercise of due diligence.'" Commonwealth v. Bennett, 930 A.2d 1264, 1272 (Pa. 2007) (quoting 42 Pa.C.S.A. § 9545(b)(1)(ii)) (emphasis removed). "Due diligence 'does not require perfect vigilance and punctilious care, but merely a showing the party has put forth reasonable effort' to obtain the information upon which the claim is based." Commonwealth v. Cox, 146 A.3d 221, 230 (Pa. 2016) (quoting Commonwealth v. Edmiston, 65 A.3d 339, 348 (Pa. 2013)).

Although stated somewhat confusingly, the PCRA court accepted Simmons' argument that he met the newly-discovered fact exception.[3] He is not aggrieved by this ruling and arguably lacks standing on appeal to challenge it. See Pa.R.A.P. 501. We nonetheless have reviewed it and agree that the PCRA court had jurisdiction. We are satisfied that Simmons could not have, with due diligence, discovered the facts on which his claim is predicated – the detective's alleged lies in the other case – since the allegations did not become public until long after Simmons' guilty plea and we do not see how

_____

[3] Compare PCRA Ct. Op. at 5 ("In the case sub judice, this Court does not have jurisdiction to review the issues raised by the Defendant because he has not satisfied the timeliness requirements under the PCRA. . . . Therefore, the Petition is untimely, unless an exception applies.") with id. at 6 ("With regard to Petitioner's claim of newly discovered evidence, this Court would have jurisdiction because Petitioner submits facts upon which the claim is predicated [that] were unknown to him and could not have been ascertained by the exercise of due diligence.").

Simmons or his counsel could have reasonably discovered them before the detective was charged.

In his second issue, Simmons challenges the effectiveness of plea counsel. He claims "he was misled by counsel's erroneous advice that if he were to go to trial, he'd be convicted of first degree, and receive a life sentence because of the three witnesses the state intended to call to testify, all of which trial counsel failed to interview these three witnesses." Simmons' Br. at 14. He alleges that because of counsel's alleged erroneous advice, his plea "was/is invalid because it was unknowingly and unintelligently made where he solely 'acted under that misguided influence when entered the guilty plea.'" Id. at 16 (quoting Commonwealth v. Broadwater, 479 A.2d 526, 531 (Pa.Super. 1984)).

"Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." Commonwealth v. Kelley, 136 A.3d 1007, 1012-13 (Pa.Super. 2016) (quoting Commonwealth v. Moser, 921 A.2d 526, 531 (Pa.Super. 2007)). Simmons thus bore the burden of pleading and proving that plea counsel's performance was deficient and that the alleged deficiency caused him to enter an involuntary or unknowing plea. Id.

Simmons' ineffectiveness claim fails. The specific advice that Simmons believes was erroneous – that he should plead guilty to third-degree murder or run a significant risk of being convicted of first-degree murder due to the

testimony the Commonwealth's witnesses would offer – was not unreasonable even in view of the allegations about the detective's behavior on other cases. See PCRA Petition at 4-5. Simmons has not suggested how plea counsel could have discovered those allegations earlier, and we do not see how counsel reasonably could have done so. As Simmons himself acknowledges, the allegations did not surface until after Simmons' guilty plea and counsel did not have to investigate the detectives' involvement in unrelated cases to discover information of dubious admissibility in Simmons' case.

Moreover, allegations of the detective's "lies" in unrelated cases do not render Simmons' guilty plea involuntary or unknowing. Simmons has at no time alleged that the detective engaged in similar conduct in his case. Nor has he identified any evidence or testimony in his case that he contends was false. Although he cited passages in the transcript of his preliminary hearing where his counsel objected to the coaching and leading of witnesses, those objections related to "coaching" by a different police officer and to leading questions from the prosecutor. See PCRA Petition at 5-6.

Finally, Simmons argues that the "lower court erred in dismissing [Simmons'] PCRA without an evidentiary hearing where PCRA counsel rendered ineffective assistance by filing a defective Finley letter, stating [Simmons] waived his claim of newly-discovered evidence, and finding trial counsel not ineffective." Simmons' Br. at 8. We review the denial of a PCRA petition without an evidentiary hearing to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in

denying relief without an evidentiary hearing. Commonwealth v. Hart, 199 A.3d 475, 481 (Pa.Super. 2018). Our standard of review of the PCRA court's legal conclusions is de novo. See id.

Simmons asserted in his response to the Rule 907 notice that PCRA counsel had been ineffective for concluding that Simmons waived the newly-discovered evidence exception. He argues on appeal that that conclusion was erroneous and the PCRA court therefore should not have denied his petition. However, the PCRA court did not find waiver, but rather denied relief because it concluded Simmons' claims were substantively meritless.

Regarding the dismissal without a hearing, Simmons has not identified any genuine issue of material fact that necessitated an evidentiary hearing. As above, the allegations of his PCRA petition, even if accepted as true, do not entitle him to relief. While the PCRA court's acceptance of the Turner/Finley letter based in part on PCRA counsel's reputation and competence did not satisfy its duty to conduct an independent review of the record, we nonetheless affirm because we have concluded that the claims were, in fact, meritless.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/27/2020</u>