J-S09020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LANDO L. LYNCH | : | |
| | : | |
| Appellant | : | No. 319 WDA 2022 |

Appeal from the PCRA Order Entered February 22, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0004697-2002,
CP-02-CR-0005402-2002

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: APRIL 25, 2023**

Lando L. Lynch appeals from the order that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

Appellant is serving a sentence of life imprisonment for first-degree murder and other crimes.  This Court summarized the facts underlying Appellant's convictions as follows:

> On the evening of March 16, 2002, Officer James Payne of the City of Pittsburgh Housing Authority Police Department was

---

[1] Although the appealed-from order included both of the above-captioned docket numbers, Appellant filed only one notice of appeal, which violates our Supreme Court's holding in **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) (mandating separate notices of appeal for each lower court docket number).  However, as the PCRA court incorrectly advised Appellant that he could seek review of its ruling by filing "a Notice of Appeal," **see** Order, 2/22/22, at ¶ 3(a), we may proceed to adjudicate the matters raised herein rather than address Appellant's **Walker** violation.  **See**, **e.g.**, **Commonwealth v. Larkin**, 235 A.3d 350, 354 (Pa.Super. 2020) (en banc).

dispatched to respond to a report of a shooting at the Whiteside Road housing complex in the Hill District section of Pittsburgh. Upon arrival at the scene, Officer Payne discovered the victim, 16-year-old D.J., clutching the side of his stomach near the back door of 892 Whiteside Road. The victim subsequently died later that evening.

That same evening, Pittsburgh homicide detective Timothy Nutter spoke with Tracy Johnson, who lived on the second floor of the building located at 805 Whiteside Road. Johnson informed Detective Nutter that while she did not directly observe the shooting, she heard three or four gunshots and a female scream, after which she called 911.[1] Detective Nutter also interviewed Darcell Boyd, a friend and former classmate of the victim, who had seen the victim talking with Appellant on the night of the murder. According to Boyd, he observed the victim and Appellant engaging in a conversation in the courtyard of the housing complex, during which, Appellant accused the victim of stealing his tennis shoes. Thereafter, Boyd stated that Appellant then held a "rusty brown .32 gun" in his right hand, pointed it at the victim's stomach from a distance of no more than three or four feet away, and shot him.

_____

[1] We note that at trial, Tracy Johnson testified that she actually witnessed Appellant shoot the victim. Johnson claimed that she was initially afraid to report this to police because Appellant's brother had previously threatened her with a firearm and accused her of "snitching" on him to police for selling drugs.

Subsequent thereto, Appellant was charged with one count of criminal homicide, with a violation of the Uniform Firearms Act ("VUFA") for carrying a firearm without a license, and with one count of possessing an instrument of crime. Following a jury trial, Appellant was convicted of [all] counts.

***Commonwealth v. Lynch*** ("***Lynch II***"), 62 A.3d 465 (Pa.Super. 2012)

(unpublished memorandum at 1-2) (cleaned up).

Appellant's direct appeal yielded no relief. In particular, this Court held that the Commonwealth's failure to timely disclose that it had conducted an

interview with Ms. Johnson the week before trial did not warrant a mistrial because, *inter alia*, trial counsel "effectively impeached [Ms.] Johnson regarding the inconsistencies, conflicts, and omissions between her past statements and trial testimony during cross examination." ***Commonwealth v. Lynch*** ("***Lynch I***"), 898 A.2d 1130 (Pa.Super. 2006) (unpublished memorandum at 7), *appeal denied*, 909 A.2d 303 (Pa. 2006).

Appellant's first, timely PCRA petition also resulted in no relief. In addition to affirming the denial of claims related to witnesses whom trial counsel had not called, we agreed with the PCRA court that Appellant's claim that the Commonwealth committed a violation of ***Brady v. Maryland***, 373 U.S. 83 (1963), by failing to disclose its pretrial interview with Ms. Johnson was previously litigated. ***See Lynch II***, ***supra*** (unpublished memorandum at 12), *appeal denied*, 70 A.3d 810 (Pa. 2013).

Appellant filed a second PCRA petition in 2016, claiming that his sentence was unconstitutional pursuant to ***Miller v. Alabama***, 567 U.S. 460 (2012) (holding unconstitutional mandatory minimum sentences of life imprisonment without possibility of parole imposed upon juvenile murderers), and ***Montgomery v. Louisiana***, 136 S. Ct. 718 (2016) (holding that ***Miller*** applied retroactively). The PCRA court denied the petition on the basis that those cases did not pertain to Appellant, who was twenty-one years old when he murdered D.J. Appellant did not appeal.

Appellant filed his third PCRA petition *pro se* on October 6, 2018, raising claims of after-discovered evidence in connection with new statements obtained from witnesses who had testified in prior proceedings. The PCRA court issued notice of its intent to dismiss but retired from the bench before actually dismissing the petition. In 2021, with the 2018 petition still pending but not yet reassigned to a new judge, Appellant filed another *pro se* PCRA petition raising the claim at issue in this appeal. Therein, Appellant asserted that in July 2021, Ja'Vonna Miller, the daughter of Tracey Johnson, contacted Appellant's family to advise that Ms. Johnson had recently died and that Ms. Miller "may have some information that may be helpful to [Appellant's] case." PCRA Petition, 9/16/21, at 4. Appellant attached to the petition a notarized statement from Ms. Miller dated July 20, 2021, and the envelope in which it was sent to Appellant, postmarked August 5, 2021. Ms. Miller's statement indicated that Ms. Johnson told her that she had lied about witnessing a murder, that Ms. Johnson was convinced by police to change her story, and that Ms. Johnson had been "working on making it right" when she died on May 1st, presumably of 2021. *Id*. at Exhibit 1.

The case was reassigned to the present PCRA court, which appointed counsel to file an amended petition. Instead, counsel filed a motion to withdraw and an extensive no-merit brief pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d

- 4 -

213 (Pa.Super. 1988) (*en banc*), addressing the claims raised in both the 2018 and 2021 petitions.[2]

Relevant to this appeal, counsel observed that Appellant knew in October 2017 that Ms. Johnson told Appellant's friend Derrick Lawrence that she "was never sure about who or what she witnessed. But detectives coerced her to testify that it was [Appellant] who committed the murder." *See Turner*/*Finley* brief, 11/10/21, at 36 (quoting a letter Appellant had written on October 23, 2017). Appellant indicated that, as of October 2017, Ms. Johnson was "now willing to tell the truth." *Id*. (quoting the October 23, 2017 letter). Yet, it was not until 2021 that Appellant came forward with Ms. Miller's statement, which was also signed by Derrick Lawrence. Counsel asserted that Appellant had no plausible explanation why he could not have discovered Ms. Johnson's recantation earlier through the exercise of due diligence. *Id*. at 39-40. Accordingly, counsel opined that Appellant did not timely raise his after-discovered evidence claim and, in any event, Ms. Miller's statement was wholly inadmissible and, thus, did not amount to after-discovered evidence. *Id*. at 70-76.

---

[2] It was proper for the PCRA court to entertain both of Appellant's pending petitions simultaneously. *See Commonwealth v. Montgomery*, 181 A.3d 359, 365 (Pa.Super. 2018) (*en banc*) ("PCRA courts are not jurisdictionally barred from considering multiple PCRA petitions relating to the same judgment of sentence at the same time unless the PCRA court's order regarding a previously filed petition is on appeal and, therefore, not yet final.").

On January 12, 2022, the PCRA court issued notice of its intent to dismiss Appellant's PCRA petitions without a hearing pursuant to Pa.R.Crim.P. 907. Therein, the PCRA court indicated that Appellant's claims were untimely filed and no timeliness exception applied to any of them, and that, even if they were timely filed, there was no material dispute of fact and they lacked merit as a matter of law. *See* Notice of Intention to Dismiss, 1/12/22, at ¶¶ 1-2, 4. Appellant filed a motion for an extension of time, asking for an additional sixty days to respond to the Rule 907 notice. By order of February 22, 2022, the PCRA court denied Appellant's request for an extension and denied his PCRA petitions for the reasons stated in the Rule 907 notice. *See* Order, 2/22/22, at ¶¶ 1-2.

Appellant filed a timely *pro se* notice of appeal on March 16, 2022, and both he and the PCRA court complied with Pa.R.A.P. 1925. This Court directed the PCRA court to address some irregularities in the docketing of filings in Appellant's cases, as well as the fact that Appellant appealed *pro se* despite counsel's request to withdraw never having been granted. The PCRA court filed orders confirming that counsel was granted leave to withdraw and directing the correction of the docket entries. The parties thereafter filed their briefs in this Court, and this appeal is ripe for disposition.

Appellant presents us with the following questions:

[1.] Did the PCRA court err in failing to consider Appellant's PCRA petition as timely filed?

[2.] Did the PCRA court err in denying Appellant's after discovered claim?

[3.] Did the PCRA court err in not considering the affidavit of Jo'Vanna Miller (biological daughter), as after discovered evidence of a dying declaration of her mother, Tracey Johnson?

Appellant's brief at 7 (cleaned up, some spelling corrected).

We begin with a review of the pertinent legal precepts. "In general, we review an order dismissing or denying a PCRA petition as to whether the findings of the PCRA court are supported by the record and are free from legal error." *Commonwealth v. Howard*, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned up).

> As to legal questions, we apply a *de novo* standard of review to the PCRA court's legal conclusions, and this Court may affirm a PCRA court's order on any legal basis. As to factual questions, our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party in the lower court. Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record.

*Id*. (cleaned up). "It is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

It is well-settled "that the timeliness of a PCRA petition is jurisdictional and that if the petition is untimely, courts lack jurisdiction over the petition and cannot grant relief." *Commonwealth v. Fantauzzi*, 275 A.3d 986, 994 (Pa.Super. 2022). Therefore, we must first consider whether the PCRA court correctly ruled that Appellant's claim was untimely filed.

The PCRA provides as follows regarding the time for filing a petition:

Any petition [filed pursuant to the PCRA], including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). Further, a petition invoking a timeliness exception "shall be filed within one year of the date the claim could have been presented."[3] 42 Pa.C.S. § 9545(b)(2).

Here, Appellant's judgment of sentence became final in early 2007 when the time for seeking review in the U.S. Supreme Court expired. Accordingly, Appellant's 2021 PCRA petition is facially untimely. To confer jurisdiction over his claim, Appellant invoked § 9545(b)(1)(ii)'s newly-discovered-facts exception. As we have summarized:

_____

[3] Claims arising before December 24, 2017, were required to have been raised within sixty days.

- 8 -

A petitioner satisfies the newly discovered facts exception when the petitioner pleads and proves that (1) the facts upon which the claim is predicated were unknown and (2) could not have been ascertained by the exercise of due diligence. Due diligence requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief, but does not require perfect vigilance or punctilious care.

*Commonwealth v. Hart*, 199 A.3d 475, 481 (Pa.Super. 2018) (cleaned up).

"[T]he due diligence inquiry is fact-sensitive and dependent upon the circumstances presented. A petitioner must explain why he could not have obtained the new facts earlier with the exercise of due diligence." *Commonwealth v. Brensinger*, 218 A.3d 440, 449 (Pa.Super. 2019) (*en banc*). Furthermore, "[i]t is well settled in Pennsylvania that the focus of the exception found at § 9545(b)(1)(ii) is on newly-discovered facts, not on newly-discovered or newly-willing sources that corroborate previously known facts or previously raised claims." *Commonwealth v. Maxwell*, 232 A.3d 739, 745 (Pa.Super. 2020) (*en banc*).

Here, Appellant indicated that he raised his claim promptly after receiving Ms. Miller's statement, which provided as follows in its entirety:

My mother, Tracy L. Johnson, informed me that she lied in her testimony as an eyewitness to a murder. She initially told the police she didn't see anything, but later changed her story. My mother was and has been a drug addict and a schizo-effective bipolar. She was easily convinced. She felt terrible about her testimony and wanted to make it right. She passed on May 1st but we were working on making it right. So, if there [are] any questions or concerns or any other way that I may be of assistance, please feel free to contact me.

PCRA Petition, 9/16/21, at Exhibit 1.

- 9 -

At Appellant's jury trial, Ms. Johnson testified that she was abusing crack cocaine and heroin during the time of D.J.'s murder, and that she obtained crack from Appellant in exchange for performing household tasks for him. *See* N.T. Trial, 3/31/03-4/3/03, at 86, 91, 150-53. While she initially denied to the police having witnessed the shooting, she contacted them to say they should come talk to her about it while she was in a rehabilitation facility. *Id*. at 133.

In a letter to the Pennsylvania Innocence Project dated October 23, 2017, Appellant indicated the following:

> I had two Commonwealth witnesses testify at my trial, a male and female. Both witnesses have been in contact with a friend of mine. I personally spoke with the male witness and he basically told me that the detectives [co]erced him to give a false statement, and testify. I never spoke to the female witness, however, my friend talked to her and she confessed to the fact that at that time she was a crack addicted, [*sic*] she was never sure about who or what she witnessed. But detectives coerced her to testify it was me who committed this murder.
>
> Both witnesses are willing to now tell the truth.

*Turner*/*Finley* brief, 11/10/21, at 36.[4]

Hence, it is plain that Appellant knew at the time of his 2003 trial that Ms. Johnson had drug addictions and did not initially identify Appellant as the shooter when she spoke to police at the scene. Further, by no later than 2017,

---

[4] Counsel quoted Appellant's letter but did not attach it to his filing. However, Appellant does not dispute the accuracy of counsel's representations or that Appellant received the information about Ms. Johnson from Mr. Lawrence before authoring the letter in 2017.

- 10 -

Appellant became aware that Ms. Johnson, the only female witness who identified him as the shooter at his trial, again admitted that she suffered from a drug addiction at the time of the incident and that her trial testimony was false, claimed that the detectives coerced her into identifying Appellant, and expressed that she was willing to come forward and testify truthfully.

The only new facts alleged in Ms. Miller's statement were that Ms. Johnson suffered from mental illness at some point in her life, that she had died, and that, at some point prior, she had informed Ms. Miller of the same facts that Ms. Johnson had shared with Mr. Lawrence in 2017, namely that Ms. Johnson was coerced into lying at trial and wanted to come forward with the truth.

Appellant does not assert that Ms. Johnson's purported mental illness, her death, or her daughter's knowledge of her past confession to lying forms the basis of the claim he now wishes to raise. Rather, he seeks a new trial based upon the fact that Ms. Johnson's trial testimony was false and coerced by police detectives. *See* Appellant's brief at 12. As such, Appellant has not founded his 2021 petition upon newly-discovered facts, but instead a new source for facts that he knew several years before raising his claim. *Accord Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1269 (Pa. 2008) ("The fact appellant discovered yet another conduit for the same claim of perjury does not transform his latest source into evidence falling within the ambit of § 9545(b)(1)(ii).").

- 11 -

Since Appellant did not allege facts in his petition to explain why he could not have presented his claim earlier, he has failed to establish a § 9545(b) timeliness exception. *Cf. **Commonwealth v. Medina***, 92 A.3d 1210, 1217-18 (Pa.Super. 2014) (*en banc*) (holding recantation testimony volunteered by witness years after the defendant's trial satisfied § 9545(b)(ii) because the witness had previously "consistently and unequivocally" identified the defendant and had not disclosed earlier that his trial testimony was false and coerced by a police detective). Therefore, the PCRA court properly concluded that Appellant's after-discovered-evidence claim was untimely raised. Consequently, neither the PCRA court nor this Court has jurisdiction to adjudicate Appellant's substantive claim, and we have no basis to disturb the PCRA court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/25/2023

- 12 -