J-S28025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| TRACY L. KRATZER | : | |
| Appellant | : | No. 550 MDA 2022 |

Appeal from the PCRA Order Entered March 10, 2022
In the Court of Common Pleas of Mifflin County Criminal Division at
No(s):  CP-44-CR-0000402-2019

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| TRACY LEE KRATZER | : | |
| Appellant | : | No. 551 MDA 2022 |

Appeal from the PCRA Order Entered March 10, 2022
In the Court of Common Pleas of Mifflin County Criminal Division at
No(s):  CP-44-CR-0000407-2019

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| TRACY LEE KRATZER | : | |
| Appellant | : | No. 552 MDA 2022 |

Appeal from the PCRA Order Entered March 10, 2022
In the Court of Common Pleas of Mifflin County Criminal Division at
No(s):  CP-44-CR-0000614-2019

BEFORE:  OLSON, J., McLAUGHLIN, J., and KING, J.

J-S28025-22

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED:  DECEMBER 16, 2022**

Tracy Kratzer appeals from the order denying his petition filed under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. He argues his trial counsel was ineffective for failing to file a motion to suppress statements he made to the police. We affirm.

Kratzer was arrested in July 2019. He was charged with one count of drug delivery resulting in death, 18 Pa.C.S.A. § 2506, and related offenses. He was also charged at two separate dockets with possession with intent to deliver a controlled substance ("PWID"), 35 P.S. § 780-113(a)(30), one count at each docket, and related offenses.

The affidavit of probable cause filed by Pennsylvania State Police Trooper Shane Varner in the drug delivery resulting in death case stated the following:

> On 07/24/2019 at approx. 1715 hours I advised Kratzer of his **Miranda**[1] [w]arnings. Kratzer related that he understood his rights and agreed to talk to me. Kratzer was then taken downstairs to the kitchen table. I asked Kratzer for his biographical information, including his phone number. Kratzer provide a phone number of 717-250-0586. I asked Kratzer what happened to the 717-247-5450 number. Kratzer related that was an old phone number. I asked Kratzer what happened to it. Kratzer related that he burnt the phone. I asked him why. Kratzer related because he got a new phone. I asked Kratzer what was wrong with the old phone. Kratzer related that he just got a new phone. I asked Kratzer if he stayed in his residence on Monday evening (07/22/19). Kratzer related that he thought he did. Kratzer then asked for an attorney.

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

- 2 -

At this time the interview was stopped. I went upstairs and assisted with the search. At the top of the steps, there was a bedroom on the left. This was the bedroom that Kratzer was in and is where the evidence was recovered.

. . .

At this time I went back downstairs where [Trooper] Daniel Bradley was sitting at the table with Kratzer. Kratzer was talking about his heroin use.

At approx. 1814 hours I advised Kratzer that he still had the same right to an attorney; however, if he wanted to talk to me, I would sit down and talk with him. Kratzer related that he was aware of his rights and wished to speak to me.

I told Kratzer, "Let's be honest. You burnt the phone because you knew you communicated with JR (the Victim) and you were scared, so you burn it." Kratzer replied, "Yeah, that's true."

I asked Kratzer when was the last time he sold heroin to the Victim. Kratzer related that he sold to the Victim approx. a month ago.

I advised Kratzer that I knew that he smoked marijuana and meth with the Victim the previous week. Kratzer related, "Yea. Ice."

I asked Kratzer what the "x" meant on the bundles of heroin. Kratzer related that was the bundle that he was using out of.

I asked Kratzer if his DNA was going to be on the bags of heroin discovered at the scene. Kratzer related, "Shouldn't be."

I asked Kratzer if he didn't sell to the Victim, then who did? Kratzer related that the Victim was in Mount Union. Maybe somebody up there.

I asked Kratzer what should happen to this person. Should they go to jail or do they just need help. Kratzer related, "Some of them need help. Some should go to jail. I know I need help. I got a dope problem."

I asked Kratzer how he would do on a polygraph. Kratzer related, "I don't know. I was always told the polygraph ain't accurate. They don't hold up."

I then advised Kratzer that the previous three questions were design questions and he responded the way that the typical guilty person responds.

I further advised Kratzer that I didn't think that he was a drug dealer that was in it for the money. I thought that he was a dealer who was trying to support his habit and he didn't mean for his friend, the Victim[,] to get hurt.

I then advised Kratzer that I knew that the heroin that the Victim had, came out of this residence. It was a matter of if he sold it to the Victim, gave it to the Victim or gave it to [a third party] to give to the Victim. Kratzer related that he gave the heroin to the Victim. Kratzer related that on the morning of 07/22/19, the Victim called or texted him and asked if he had any heroin. He was getting sick. Kratzer related that he didn't want to give him any because he was young and didn't know how to use it right. Kratzer related that he gave into him and told him to stop by that afternoon. Kratzer related that at approx. 1330-1400 hours the Victim pulled in the driveway in his Mustang. Kratzer related that he told him to wait outside. He didn't want [another person] to know what he was doing. Kratzer related that he met the Victim at his car. Kratzer related that he gave the Victim three bags of heroin. I asked Kratzer if anyone was with the Victim. Kratzer related that the Victim was alone. I asked Kratzer if the Victim gave him anything in exchange. Kratzer related that the Victim gave him a couple of "joints".

I asked Kratzer if he would complete a custodial written statement for me. Kratzer related that he would.

Affidavit of Probable Cause, filed Nov. 10, 2019. The police transported Kratzer to the police barracks, where he was again interviewed and provided a recorded statement.

In August 2020, Kratzer entered a negotiated guilty plea to drug delivery resulting in death. The court sentenced him to eight to 20 years' incarceration.

He also entered guilty pleas to PWID. The court sentenced him to concurrent terms of 21 to 42 months' incarceration for these convictions.

In August 2021, Kratzer filed a timely, *pro se* PCRA petition. The court appointed counsel, who filed an amended petition, which included a claim that his trial counsel was ineffective for failing to file a motion to suppress statements he made to the police. The court held a hearing, where trial counsel and Kratzer testified.

Trial counsel testified that Kratzer did not ask him to file a motion to suppress. N.T., 2/15/22, at 16. He also testified he did not think it would be appropriate to file a motion to suppress, stating, "Well, he was advised, he said he wanted an attorney. Subsequent to that . . . he started talking again and then after that is when he basically spilled the beans and advised of his involvement relative to the telephone." *Id.* Counsel explained, "[E]ven though one asks for an attorney, one can subsequently waive that request and that's how I viewed this." *Id.* When asked what he believed the police had to do to be able to question the suspect again, he responded, "Well, I would assume make sure that . . . they are fully aware of their rights and they wish to re-engage." *Id.* at 17.

Kratzer testified that he asked his trial counsel to file a motion to suppress the statement "because [he] was under the influence of heroin." *Id.* at 28. He testified he told trial counsel he was under the influence of heroin at the time of the interview. *Id.* at 30. He stated that at the time of the interview he "didn't have a clear mind. And the thing was I got tired of them

- 5 -

kept pushing me and pushing me, and I was all tired and high on heroin, I just wanted to go lay down. So that's the reason." *Id.* at 32. When asked if he had been thinking clearly, Kratzer responded, "No." *Id.* at 33

He further agreed that he asked trial counsel to file a motion to suppress based on the affidavit of probable cause:

> Q. And turning to the fourth page of [the affidavit of probable cause], . . . . it talks about how Trooper Varner first came into your home and advised you of your *Miranda* warnings, right?
>
> A. Right.
>
> Q. And then he talked to you a little bit about your phone and then you asked for an attorney; is that right?
>
> A. Right.
>
> Q. Then it talks about some other things that he did. He went upstairs and then he came back down, and it says that he saw you talking to Trooper Bradley at the table; is that right?
>
> A. Yes.
>
> Q. And then he told you again that you had the right to an attorney, but that he would talk to you if you wanted. It says that in the Affidavit, right?
>
> A. Yeah.
>
> Q. Was that the basis for you asking [trial counsel] to have your statements suppressed?
>
> A. Yeah.

*Id.* at 29-30.

The PCRA court denied the petition, finding that the suppression motion had arguable merit, but that counsel had a reasonable basis for not filing the motion. The court reasoned that counsel did not see merit in the suppression

- 6 -

issue and "did not find it a valuable strategy to file and delay" the case by waiting for an opinion. Trial Court Opinion, filed Mar. 10, 2022, at 2.

Kratzer filed a timely appeal. He raises the following issue:

> Did the trial court err in denying Mr. Kratzer's petition for post-conviction relief, when his trial counsel failed to file a motion to suppress the statements made by him to Trooper Varner on the grounds that they were obtained in violation of **Miranda v. Arizona**, 384 U.S. 436 (1966), that they were involuntary – in part being the product of intoxicating substances on the Defendant - or that they were the product of prior unlawfully obtained statements?

Kratzer's Br. at 2-3.

Our standard of review of an order denying PCRA relief is limited to determining "whether the PCRA court's determination is supported by evidence of record and whether it is free of legal error." **Commonwealth v. Hart**, 199 A.3d 475, 481 (Pa.Super. 2018) (citation omitted).

To prevail on an ineffective assistance of counsel claim, the petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014). "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." **Commonwealth v. Ousley**, 21 A.3d 1238, 1244 (Pa.Super. 2011) (quoting **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa.Super. 2010)). "The failure to prove any one of the three [ineffectiveness] prongs results in the failure of petitioner's claim." **Id.** (quoting **Rivera**, 10 A.3d at 1279).

Kratzer argues the trial court's reasoning in denying the ineffectiveness claims is flawed in that it found that a suppression motion would have had merit, but that it was reasonable for counsel not to file a motion because counsel believed it lacked merit. Kratzer's Br. at 11. He maintains we cannot presume counsel is effective where he failed to recognize a meritorious issue. Kratzer further maintains he suffered prejudice, pointing out that he "admitted to nearly every element of the most serious charge that he was facing – drug delivery resulting in death – as well as several other offenses." *Id.* at 13-14. "[F]acing the near certainty that a jury would convict him for the death of his acquaintance, [he] was compelled to plead guilty." *Id.* at 14. Kratzer claims that his statements should have been suppressed because the police reinitiated an interrogation. Kratzer argues that "[c]ontinued interrogation of a criminal suspect after he has invoked his right to speak with an attorney may be considered inherently coercive." *Id.* at 17. He maintains the Commonwealth did not present evidence that Kratzer voluntarily waived his right to an attorney. He points out that after a defendant invoked his right to an attorney, any reversal in that position must be initiated by the defendant, which he alleges did not happen here.

We agree with Kratzer that the PCRA court's reasoning is flawed. Counsel's reasonable basis for not filing a meritorious motion cannot be that he believed it lacked merit. However, we do not agree with Kratzer or the PCRA court that the underlying claim – that is, that that the evidence should have been suppressed – has arguable merit. We point out that at the PCRA

stage, it is Kratzer, not the Commonwealth, that bears the burden of establishing each prong of the ineffectiveness claims, including the arguable merit prong. *See Ousley*, 21 A.3d at 1244.

In *Miranda*, the United States Supreme Court established that an accused has the right to have counsel present during custodial interrogations under the Fifth and Fourteenth Amendments to the United States Constitution. 384 U.S. at 474. In *Edwards v. Arizona*, the United States Supreme Court held that "when an accused has invoked his right to have counsel present during custodial interrogation," police may not conduct further interrogations "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. 477, 484–85 (U.S. 1981). If police further interrogate the suspect outside the presence of counsel, "the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards." *Commonwealth v. Champney*, 161 A.3d 265, 272 (Pa.Super. 2017) (*en banc*) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991)).

"To trigger these protections, a defendant's request for counsel must be sufficiently clear 'that a reasonable police officer would understand the statement to be a request for an attorney.'" *Champney*, 161 A.3d at 272 (quoting *Davis v. United States*, 512 U.S. 452, 459 (1994)). Further, if the accused initiates further communication, the "subsequent event" must show

"a waiver of the . . . right to have counsel present during the interrogation." *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983).

In *Bradshaw*, during police questioning following a fatal car accident, the defendant invoked his right to counsel, and the police officer terminated the interrogation. 462 U.S. at 1041-42. When the defendant was being transferred from the police station to the jail, he asked an officer, "Well, what is going to happen to me now?" *Id.* at 1042. The officer responded by saying, "You do not have to talk to me. You have requested an attorney and I don't want you talking to me unless you so desire because anything you say – because – since you have requested an attorney, you know, it has to be at your own free will." *Id.* The defendant said he understood. He and the officer then discussed where the defendant was being taken and the offense for which he would be charged. *Id.* The officer suggested that taking a polygraph test might help the defendant, and the defendant agreed to take one. *Id.* The next day, after being read a written waiver of his *Miranda* rights, and signing the waiver, the defendant submitted to a polygraph. The examiner informed him that he did not believe the defendant was telling the truth. The defendant then admitted he had been at the wheel of the vehicle in which the deceased had been killed and "had consumed a considerable amount of alcohol, and that he had passed out at the wheel before the vehicle left the roadway." *Id.*

The United States Supreme Court found that no violation of *Miranda* had occurred. It concluded that the defendant had initiated further conversation by asking, "Well, what is going to happen to me now?" *Id.* at

- 10 -

1045. It reasoned that the question "evinced a willingness and a desire for a generalized discussion about the investigation," and was not "merely a necessary inquiry arising out of the incidents of the custodial relationship." ***Id.*** at 1045-46. The Court next addressed whether, after the inquiry, there was a valid waiver of the rights to counsel and to silence. ***Id.*** at 1046. It found the trial court did not err in concluding that the waiver was valid, noting the trial court had found there had been no threats, promises, or inducements to talk, the defendant had been advised of his rights and understood them, and "that within a short time after requesting an attorney he changed his mind without any impropriety on the part of the police." ***Id.*** (citation omitted).

Here, in the affidavit of probable cause, Trooper Vance stated Kratzer invoked his right to counsel, and Trooper Vance immediately ceased speaking with Kratzer. When Trooper Vance returned to the room, Kratzer was speaking to another trooper regarding his heroin use. Kratzer presented no evidence or testimony at the PCRA hearing as to who initiated the conversation—Kratzer or the second trooper. Kratzer testified about the affidavit of probable cause but did not elaborate on what occurred when Trooper Vance was not present. If Kratzer initiated a conversation about his drug use, this re-initiation coupled with Trooper Vance's reminder that he had a right not to speak with him, would constitute a voluntary waiver of his right to counsel. ***Bradshaw*** 462 U.S. at 1045-46. We therefore cannot agree that Kratzer proved the

underlying claim had arguable merit. Because he did not prove the underlying claim had merit, his counsel ineffectiveness claim fails.[2]

In his question presented, Kratzer also claims that counsel should have filed a motion to suppress his waiver as involuntary because he was under the influence of heroin. Kratzer raised this argument before the PCRA court and in his statement of questions presented. However, he does not argue in the argument section of his brief that the waiver was involuntary because he was on heroin. He therefore waived the claim. Pa.R.A.P. 2119(b)-(c) (requiring citation to legal authority and reference to the record in appellate briefs); **Commonwealth v. Hunzer**, 868 A.2d 498, 509, 516 (Pa.Super. 2005) (holding an appellant waives a claim where he failed to cite any legal authority in support of an argument in his appellate brief).

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/16/2022

---

[2] This Court "may affirm the decision of the [PCRA] court if there is any basis on the record to support the [PCRA] court's action[.]" **Commonwealth v. Wiley**, 966 A.2d 1153, 1157 (Pa.Super. 2009) (quoting **Commonwealth v. Blackwell**, 936 A.2d 497, 499 (Pa.Super. 2007)).