J-S07027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRY JALIL RAFI BOWENS | : | |
| | : | |
| Appellant | : | No. 434 MDA 2024 |

Appeal from the PCRA Order Entered February 21, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007390-2016

BEFORE: NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED JUNE 09, 2025**

Terry Jalil Rafi Bowens appeals from the order dismissing his Post Conviction Relief Act petition. 42 Pa.C.S.A. §§ 9541-46. He argues trial and appellate counsel were ineffective. We affirm.

This Court previously set forth the factual history:

> [Bowens'] convictions stem from a traffic stop on Route 30 in York, Pennsylvania at approximately 6:30 p.m. on October 12, 2016. At that time, Pennsylvania State Trooper Wesley Johnson, observing traffic from his marked police cruiser, saw a gray Chrysler 200 with New Jersey plates commit a traffic violation. He activated his lights and pulled the vehicle over to find two occupants: Maxi Echevarria in the driver's seat and [Bowens] in the front passenger seat. Echevarria produced documents revealing the vehicle was registered to his partner, Ms. Solita Thomas of New Jersey, whom he indicated had given him permission to drive it. Echevarria represented that he and [Bowens] were journeying from York City to Lancaster, possibly further on to Philadelphia. Trooper Johnson ran Echevarria's information and determined that he had a suspended license and an active arrest warrant.

Trooper Johnson then spoke with [Bowens] who, during the officer's interaction with Echevarria, had repeatedly put his hands out the window to signal Trooper Johnson. Trooper Johnson, based upon his experience, perceived this as an effort to interrupt his questioning of Echevarria and an "attempt to control the situation, control the information, conversation, and their environment." N.T. Trial, 9/13-15/17, at 144. [Bowens] offered "Terry Bowen" rather than "Terry Bowens" as his name, and also provided a birthdate that was off from the correct date by one day and one year. [Bowens] was unable to supply a social security number. *Id.* at 145-46. Trooper Johnson requested that [Bowens] show him his Facebook profile in an attempt to establish his identity. [Bowens] used his Samsung Galaxy smart phone to access his Facebook profile, which identified [Bowens] as "Nino Brown." *Id.* at 147-49. Trooper Johnson eventually ascertained [Bowens'] identity, as well as the fact that he also had an active arrest warrant. [Bowens] and Echevarria were both arrested at the scene pursuant to the outstanding warrants and their phones were seized.

With the owner of the vehicle in New Jersey and both occupants of the vehicle being taken into custody, Trooper Johnson determined that the vehicle required a tow and conducted an inventory search. He discovered that the vehicle's glove box was locked. After obtaining the key, permission from the vehicle's owner, and a search warrant, police searched the vehicle and seized a 9mm Ruger SR9c firearm, a .40 caliber Kahr firearm, heroin, a cutting agent, and packaging. The Ruger had been reported stolen, while the serial number on the Kahr had been obliterated, preventing the police from running a query to see if it had been reported.

After recovering the contraband, Trooper Johnson applied for and was issued warrants on October 14, 2016, to search [Bowens'] phone as well as two phones seized from Echevarria. Trooper Johnson secured the devices by putting them in airplane mode, turning them off, and wrapping them in aluminum foil to prevent the data thereon from being accessed and altered remotely. He then immediately sent the devices to Detective Mark Baker.

Detective Baker conducted a forensic analysis of [Bowens'] phone, which was the only one of the three that

could be analyzed using a Cellebrite Touch device. Detective Baker was able to access contacts, applications, texts, photos, and video on [Bowens'] phone. The photographic images recovered were thumbnails located in the phone's image cache directory. The presence of an image in the cache directory did not mean that the photo was taken by [Bowens'] phone, as opposed to having been received by his phone via text message or other means. Rather, it meant only that the photos were viewed by the phone's user at some point, and thumbnails saved for faster repeat viewing.

Among the nearly 4,000 images recovered were multiple selfies of [Bowens], selfies of people other than [Bowens], and a photograph of a Ruger identical to the Ruger recovered from the glovebox of the Chrysler 200. Text messages from October 8, 10, and 11, 2016, sent and received between [Bowens'] phone and one of the phones seized from Echevarria, revealed plans to secure transportation and both 9mm and .40 caliber ammunition and travel to Lancaster to sell heroin.

[Bowens] was charged with criminal conspiracy to commit [possession with intent to deliver heroin ("PWID")], possession of heroin, [PWID], possession of drug paraphernalia, possession of a firearm with an altered serial number, receiving stolen property ("RSP"), and firearms not to be carried without a license. Prior to trial, [Bowens] sought to suppress the images and text messages extracted from his phone, arguing that the warrant had expired prior to its execution. Unpersuaded, the trial court declined to suppress the texts between [Bowens] and Echevarria in the days prior to the traffic stop.

At trial, [Bowens'] defense was that the Commonwealth's evidence failed to establish that he had anything to do with the contraband, but rather showed only his mere presence in the car. He maintained that any nervousness on his part during Trooper Johnson's traffic stop was due to the outstanding warrant against him, rather than any guilty knowledge of the contents of the glove box. He posited that the presence of selfies of other people on his phone indicated that it was a community phone, and that the drug-related texts recovered from it were sent by one of its other users. The jury nonetheless found [Bowens] guilty on all

charges except possession of the Kahr pistol with the altered serial number.

***Commonwealth v. Bowens***, 265 A.3d 730, 737-39 (Pa.Super. 2021) (*en banc*) (footnotes and some internal citations omitted).

During Trooper Johnson's testimony, the trial court requested a sidebar because it was concerned the trooper would "blurt out" that Bowens "had a warrant pending somewhere else." N.T, Sept. 13-15, 2017, at 147-48. The Commonwealth stated that it was its "impression the defense wants to bring that out . . . as an alternative explanation for nervousness." ***Id.*** at 148. Defense counsel confirmed that was his plan "[a]s long as [the trooper] leaves it to he was arrested on an unrelated warrant out of another county." ***Id.*** Counsel stated that he "wasn't going to go into details of it." ***Id.*** On cross-examination, trial counsel asked about the active warrant, and Trooper Johnson revealed the warrant was issued for drugs and firearms violations:

> Q. And during this traffic stop you actually arrested Mr. Bowens, correct?
>
> A. Mr. Bowens was taken into custody for active warrant for his arrest.
>
> Q. And those – just so we are clear, those are unrelated warrants and nothing to do with this case?
>
> A. The warrants were issue for drugs and firearms violations. However, they were not from this case -- actual charge from this case.

***Id.*** at 177. Following this testimony, trial counsel requested a sidebar where he stated that the Trooper had gone into detail about the warrant in response to a yes or no question, and requested an opportunity to speak with Bowens

- 4 -

about a course of action. *Id.* at 180. After a break, counsel informed the court that he advised Bowens to request a mistrial but that Bowens wanted the court to issue a curative instruction. *Id.* at 181. The court thereafter gave a curative instruction. *Id.* at 181-82.

Trooper Johnson further testified that Bowens related that he was shaking because he was cold and anemic and, after Bowens requested a sweatshirt, the trooper obtained a sweatshirt for him. *Id.* at 177.

The trial court sentenced Bowens to 14½ to 29 years' incarceration. This court, *en banc*, affirmed the judgment of sentence. The Pennsylvania Supreme Court denied a petition for allowance of appeal.

In July 2022, Bowens filed a *pro se* PCRA petition. The court appointed counsel, who filed an amended petition and a second amended petition. The court held an evidentiary hearing.

At the hearing, Bowens' trial counsel testified that he had wanted the jury to know that there had been an active arrest warrant for Bowens "to explain why he was acting nervously," and stated he was not "going to get into any details of that warrant." N.T., Feb. 16, 2023, at 10. He testified that when the trooper testified as to the details of the warrant, there were three options: "ignore it, ask for a curative instruction, or [request] a mistrial." *Id.* at 12. He discussed the options with Bowens and advised Bowens to request a mistrial. *Id.* However, Bowens requested a curative instruction, which the court gave. *Id.* at 12-13. Counsel testified that he elicited the information about the warrant "to give the jury an explanation that was not that he knew

- 5 -

there were guns and drugs in the car but rather he knew that he had a warrant out for his arrest and so anybody in that situation is going to act nervous." *Id.* at 13-14. Counsel testified that he did not consider a pretrial motion *in limine* because he "expect[ed] the trooper to be professional and prepared by the district attorney and not tell us all of the underlying offenses, especially when the question didn't ask what the underlying offense was." *Id.* at 15. He reiterated that after the Trooper's testimony he wanted to request a mistrial, but Bowens did not, and stated that they "talked about it for a while." *Id.*

Counsel next testified regarding the placing of the cell phone into airplane mode. *Id.* at 18. He stated he did not file a motion to suppress based on this because it "didn't cross [his] mind":

> It didn't cross [his] mind. [He] thought it was decent police work to put it on airplane mode to preserve the phone and its integrity so it can't be used to call out or call in. [He was] not aware of any law or statute that ma[de] it an issue.

*Id.* at 19.

Appellate counsel testified that he included in the concise statement of issues on appeal a claim challenging the sufficiency of the affidavit of probable cause for the warrant to search the phone, but he did not argue it on appeal. N.T., Mar. 31, 2023, at 10. He testified that the affidavit "did not have a great deal of detail . . . linking Mr. Bowens specifically to the illegal activity," but concluded that "probable cause is a pretty low standard . . . and [he] did think there was enough in there that the trial court's decision to deny a suppression on that basis was not going to be reversed." *Id.* at 10-11. He further testified

he believed there was an "insurmountable inevitable discovery problem," stating that if the initial warrant had been denied the police could have added more detail from the traffic stop and the warrant would have been granted. *Id.* at 11.[1]

The court denied the PCRA petition, and Bowens timely appealed. Bowens raises the following issues:

> A. Whether trial counsel was ineffective for questioning and eliciting testimony from the arresting trooper regarding highly prejudicial evidence that . . . Bowens was arrested during the traffic stop on warrants that involved drugs and firearms, the exact same charges in the present case?
>
> B. Whether trial counsel was ineffective for failing to submit a motion *in limine* to have the court instruct the witness to limit the response to questioning regarding an outstanding warrant without disclosing the nature of the charges for the warrant involving drugs and firearms, prior to his testimony?
>
> C. Whether tr[ia]l counsel was ineffective for failing to submit a motion to suppress evidence obtained from the Galaxy S6 cellular phone based upon the trooper seizing the phone and placing the phone on airplane mode, which constitutes an illegal search, prior to obtaining search warrant for the content of the cellular phone?
>
> D. Whether trial counsel was ineffective for failing to file a pre-trial motion to suppress evidence extracted from the Galaxy S6 cellular phone based upon the insufficiency of the probable cause set forth in the search warrant affidavit that . . . Bowens, or the cellular phone found in his possession were relate[d] to the controlled substance, paraphernalia or firearms found in the locked gloved compartment of the vehicle in which he was a passenger and for which the driver had exclusive access, possession and control?

---

[1] Bowens also testified at the evidentiary hearing. N.T., Mar. 31, 2023, at 23-53.

Bowens' Br. at 4-5 (suggested answers and some capitalization omitted).

Our standard of review of an order denying PCRA relief is limited to determining "whether the PCRA court's determination is supported by evidence of record and whether it is free of legal error." *Commonwealth v. Hart*, 199 A.3d 475, 481 (Pa.Super. 2018) (citation omitted).

Bowens' issues challenge the effectiveness of counsel. To prevail on an ineffectiveness claim, the petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." *Commonwealth v. Ousley*, 21 A.3d 1238, 1244 (Pa.Super. 2011) (quoting *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa.Super. 2010)). When "determining whether counsel's performance lacked a reasonable basis, 'a court will not find counsel to be ineffective if the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interest.'" *Commonwealth v. Williams*, 899 A.2d 1060, 1063-64 (Pa. 2006) (quoting *Commonwealth v. Rivera*, 773 A.2d 131, 140 (Pa. 2001)). To establish the prejudice prong, "the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127-28 (Pa. 2011).

In his first two issues, Bowens claims trial counsel was ineffective for failing to prevent the trooper's testimony that Bowens was arrested on a warrant for drug and firearms crimes. Bowens claims his counsel should not have opened the door to the trooper's testimony that the warrant was for prior firearms and drug charges. Bowens argues the testimony was "highly prejudicial" because the instant trial involved the same types of charges. Bowens' Br. at 16. He maintains counsel should have filed a motion *in limine* asking the court to instruct the trooper not to respond with prejudicial testimony. Bowens contends a curative instruction could not have cured the prejudice from the testimony. He further claims the testimony was not needed, as there already was an explanation for Bowens' apparent nervousness—Bowens was anemic, cold, and shaking, and needed his coat. Bowens maintains that he does not challenge counsel's effectiveness for counsel's conduct after the information was elicited, but rather challenges his effectiveness for asking the questions regarding the warrant for prior criminal matters.

Here, the PCRA court concluded counsel had a reasonable basis to elicit testimony about the warrant and Bowens cannot establish prejudice where he elected to request a curative instruction rather than a mistrial:

> Trial Counsel had a reasonable basis for his actions and advised [Bowens] to request a mistrial based on the trooper's testimony. A curative instruction was given to the jury, given [Bowens'] own decision to move forward with the trial. [Bowens] was not prejudiced by Trial Counsel's actions or inactions, as it was [Bowens'] decision to move forward with the trial.

PCRA Ct. Op., filed July 8, 2024, at 12.

The record supports the PCRA court's findings, and it did not err. Counsel had a reasonable basis for eliciting testimony about the active warrant—to explain Bowens' nervousness. It also was reasonable to believe the trooper would not divulge the underlying crimes. Further, Bowens failed to establish prejudice, where he elected to request a curative instruction rather than a mistrial.

In his third issue, Bowens argues counsel should have included in the motion to suppress a claim that placing the phone in airplane mode constituted a warrantless search. Bowens cites **Commonwealth v. Fulton**, 179 A.3d 475 (Pa. 2018), where the Pennsylvania Supreme Court concluded that powering on a flip phone constituted a search. Bowens further argues that inevitable discovery does not apply here.

In **Fulton**, a murder victim had told the police that "Jeff" shot him. The victim had phone calls with a number listed in his phone as "Jeff." **Id.** at 479. Later that day, after responding to a call concerning drug activity and a man with a gun, police officers found Fulton and three others in a car where they also observed a gun, holster, and cell phones. The police seized Fulton's phone when they arrested him. **Id.** at 479-80. The lead detective, without seeking a

search warrant, "opened each phone, powered them on and searched each phone's menu to discern its assigned phone number." *Id.* at 480.[2]

The Court found that powering on the phone was a search, that is, "an intrusion upon a constitutionally protected area . . .without . . . explicit or implicit permission." *Id.* at 488. It reasoned that turning on the phone "exposed to view portions of the phone that were previously concealed and not otherwise authorized by a warrant or an exception to the warrant requirement." *Id.* The Court found powering the phone on was "akin to opening the door to a home," noting it permitted the police to "obtain and review a host of information on the cell phone, including viewing its wallpaper, reviewing incoming text messages and calls, and accessing all of the data contained in the phone." *Id.*

Here, the PCRA court concluded counsel was not ineffective, finding placing the phone in airplane mode was not a search:

> The phone was seized in a search incident to lawful arrest and a search warrant for the cell phone was applied for based on evidence obtained through a lawful search of the vehicle within which [Bowens] was stopped. Additionally, in *Riley v. California*, 573 U.S. 373, 390 (S.Ct. 2414), the following was indicated by the United States Supreme Court:
>
> > In any event, as to remote wiping, law enforcement is not without specific means to address the threat. Remote wiping can be fully prevented by disconnecting a phone from the network. There are at

---

[2] The detective left the phone powered on and monitored the phone's incoming calls and texts by viewing its internal or external display screen. *Fulton*, 179 A.3d at 480. The detective also answered an incoming call to the phone. *Id.*

- 11 -

least two simple ways to do this: First, law enforcement officers can turn the phone off or remove its battery. Second, if they are concerned about encryption or other potential problems, they can leave the phone powered on and place it in an enclosure that isolates the phone from radio waves. Such devices are commonly called "faraday bags" . . . they are essentially sandwich bags made of aluminum foil: cheap, lightweight, and easy to use. They may not be a complete answer to the problem, but at least for now they provide a reasonable response. In fact, a number of law enforcement agencies around the country already encourage the use of Faraday bags.

*Id.*

Setting a phone to "airplane mode" is substantially similar to placing a phone in a "faraday bag," as the phone is completely isolated from radio waves when in "airplane mode." No information was removed or reviewed prior to obtaining a warrant. Therefore, disabling a phone prior to securing a warrant does not constitute an illegal search under the Fourth Amendment.

Therefore, this court cannot find that the outcome of [Bowens'] case would have been any different if Trial Counsel had moved to suppress the contents of the Galaxy S6. Therefore, we do not find that Trial Counsel was ineffective on this issue.

PCRA Ct. Op. at 14-15.

The record supports the PCRA court's findings and it did not err in denying the ineffectiveness claim. In *Fulton*, the officer powered on a flip phone and "exposed to view portions of the phone that were previously concealed," including wallpaper, incoming text messages and calls and, once on, the police had the ability to access all data contained in the phone. 179 A.3d at 488. Here, there is no evidence that the officer powered on the phone. Rather, the officer placed the phone in airplane mode, and moreover, there is

no suggestion the officer viewed or searched any content on the phone. Nor is there any evidence that, by placing it in airplane mode, he gained access to anything that he would not have had access to by merely moving the phone, which would be required to store it. ***See Commonwealth v. Maness***, No. 439 MDA 2022, 2022 WL 17335807, at \*15 (Pa.Super. filed Nov. 30, 2022) (unpub. memorandum) (concluding trial court properly denied suppression where "without searching or viewing the information contained on" a cell phone, a trooper put it in airplane mode and "placed the device in his police vehicle in order to preserve the cellular telephone and its contents until a search warrant could be obtained").

In his final issue, Bowens maintains his appellate counsel was ineffective for not arguing that the search warrant was not supported by probable cause. He argues the only relevant fact recited in the affidavit was that he was a passenger in a car where drugs, drug paraphernalia, and firearms were found in a locked glove compartment. Bowens contends "that he was only present in the vehicle and that there was no nexus expressed in the affidavit of probable cause between [Bowens], his cell phone and the controlled substance and firearms located in the locked glove compartment." Bowens' Br. at 29-30.

The affidavit in support of the warrant to search Bowens' phone included information regarding the stop, including the following:

> After speaking with ECHEVARRIA, I requested the passenger step out and accompany me to the rear of the vehicle, he agreed. The [passenger] accompanied me to the rear of the vehicle and stated that he did not have an identification card on him, but would provide his name and

date of birth. The unidentified passenger stated that his name was Terry Bowen, DOB . . . /94. BOWEN stated that he did not know his social security number, but could call his mother to find it out. While speaking with BOWEN his repo[ns]es were delayed, he often paused to think for several seconds prior to answering. When asked direct questions BOWEN consistently avoided eye contact. BOWEN was subsequently identified as Terry BOWENS DOB . . . /93. After several attempt[s] to conceal his identit[]y, BOWENS was found to have active NCIC warrants for his arrest issued in Delaware County and Philadelphia County. The original offenses were firearms violations and narcotics violations. . . .

A search warrant was executed on the vehicle on 10/13/2016 at approximately 1005 hours. At that time, two handguns were recovered, a stolen Ruger SR9C and a Kahr CW40 with an obliterated serial number. Stored with the handguns was a quantity of suspected raw heroin weighing approximately 46 grams, twenty double sealed blue glassine bags containing suspected heroin, and numerous items of drug paraphernalia consisting of packaging material.

Application for Search Warrant and Application, at Affidavit of Probable Cause.

The PCRA court cited appellate counsel's testimony at the PCRA hearing that although the affidavit in support of the warrant was "a little thin," probable cause was a low standard and he thought the trial court's decision would be affirmed. The PCRA court agreed with counsel's "assessment that inevitable discovery would have applied" and found Bowens was not prejudiced by counsel's decision to not pursue the issue on appeal, because it lacked merit. PCRA Ct. Op. at 17.

The PCRA court further found there was probable cause to support the warrant for the search of the phone:

In looking at [the search warrant], there was enough of a connection. "[P]robable cause [for a search warrant]

- 14 -

exists if there is fair probability that contraband or evidence of crime will be found in particular place." ***Commonwealth v. Gillespie***, 821 A.2d 1221, 1226 (Pa. 2003). . . . [T]he Affidavit . . . ha[d] enough to show probable cause. Specifically, the totality of the circumstances of the stop, including [Bowens'] failure to give his correct name was questionable. Then, once he was identified, he had [a] warrant[] for guns and drugs after he was found in a car with guns and drugs. While his prior warrant is not evidence of this crime, it can be part of the totality of the circumstances for the warrant.

***Id.*** at 17-18.

The record supports the PCRA court's findings and it did not err. The affidavit of probable cause cited sufficient factors to support a finding of probable cause. The PCRA court properly rejected the ineffectiveness claim.

Order affirmed.


Judgment Entered.


_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 06/09/2025